# CHARLESTON.

## Ward *v.* Ohio River R'd Co.

Submitted June 10, 1891.—Decided December 12, 1891.

1. EMINENT DOMAIN—QUANTUM DAMNIFICATUS—INJUNCTION.

The distinction between mere damage to property by an internal improvement company in the construction of its work, and the actual appropriation or taking of the same, is to be observed and insisted upon where an injunction is prayed by the owner, as it has been heretofore defined by this court in *Mason* v. *Bridge Co.*, 17 W. Va. 396; *Spencer* v. *R. R. Co.*, 23 Id. 407; *Arbenz* v. *R. R. Co.*, 33 W. Va. 1 and *Gibbens* v. *R. R. Co.*, (12 S. E. Rep. 1093).

2. EMINENT DOMAIN—QUANTUM DAMNIFICATUS—INJUNCTION—JURISDICTION.

Where in order to sustain a bill of injunction, a jurisdictional fact is necessary to be established, such fact must be not only alleged in the bill, but it should be sustained by sufficient evidence to at least make a *prima facie* case before the court proceeds to refer the cause to a commissioner, or to order an issue out of chancery.

3. EMINENT DOMAIN—QUANTUM DAMNIFICATUS—INQUISITION—ORDER.

When an order is made by the chancellor directing an issue of *quantum damnificatus* in a suit between the owner of property and an internal improvement company, the order should state that the issue is to be tried by a jury of twelve freeholders, if either party desires it.

4. EMINENT DOMAIN—QUANTUM DAMNIFICATUS—INQUISITION.

In such case the issue is in the nature of an inquisition on behalf of the Court to determine the amount which should be awarded to the owner in consideration of the involuntary appropriation of his private property to the public use through the agency of an internal improvement company, to which has been delegated by general law or otherwise the right of eminent domain. The question of title is ordinarily not involved, and the jury should assess the value of the fee where the property is taken, or the amount of damage thereto when the property is only damaged.

5. EMINENT DOMAIN—QUANTUM DAMNIFICATUS—ORDER.

Upon the finding of the jury in such case, it is error to decree the amount so found against the company in such a form as that execution can be issued upon the foot of the decree; the order

61

should be that when the company pays to the owner, or deposits in court as the case may be, the sum found by the jury, the injunction shall be wholly dissolved, but until that time it is continued in full force and effect. *Mason* v. *Bridge Co.,* 20 W. Va. 243.

*V. B. Archer* and *J. B. Jackson* for appellant, cited 23 W. Va. 407; 33 W. Va. 113; 1 Call (s. p.) 382; 2 Call (s. p.) 369; 9 Gratt. 294; 11 W. Va. 584; 22 W. Va. 1; 7 W. Va. 717; 35 W. Va. 57.

*J. G. McLure* and *G. Loomis* for appellee, cited 23 W. Va. 443; 2 Wood R'y Law § 253; 1 Wood R'y Law § 231; Mills Em. Dom. § 30; 17 W. Va. 386; 13 Rep. 306; 56 Jow. 605; 1 Johns. Ch'y (Phillips *v.* Thompson); 4 W. Va. 610; 11 W. Va. 628; 29 W. Va. 201; Id. 569; 11 W. Va. 482.

LUCAS, PRESIDENT:

The facts in this case are as follows : In the year 1883 the Ohio River Railroad Company, a corporation duly chartered under the laws of the State of West Virginia for the purpose, was constructing a line of railroad down the Ohio River from the city of Wheeling to and through the city of Parkersburg. On the 26th day of June, 1883, the Mayor and Council of the city of Parkersburg, the legally constituted corporate authority of said city, by an ordinance, granted to the said railroad company the right to lay its tracks, construct and operate its railroad through said city and along and upon certain streets and alleys therein, and amongst others along Second street in said city.

In pursuance to said authority said railroad company began the work of constructing a line of railroad from Ann street along Second street, for the purpose of connecting its line of railroad with the line of the Parkersburg Branch Railroad Company, which railroad was being constructed along and upon the surface of said Second street. The authority so given to the Ohio River Railroad Company to construct its line of railroad along Second street from Ohio street to Green street, authorized it to cross Ann street, Juliana street, Market street and Avery street, and all alleys from Ohio street to Green street.

At this time the plaintiff, Patrick Ward, claimed title to a lot situated at the corner of said second and Market streets upon which was situated a building in which said Ward was carrying on a livery business. The property fronted on Market street with the side on Second street. And on the 3d day of September, 1883, said railroad company was engaged in constructing its line of railroad along Second street past the lot so occupied and claimed by said Patrick Ward. On said day said Ward presented his bill in chancery to the Judge of the Circuit Court of Wood county, in chambers, praying for an injunction to enjoin, restrain and inhibit the said Ohio River Railroad Company from laying its tracks along Second street in front of said plaintiff's property, and from running its locomotives and cars upon any tracks which might be so placed upon said street, and from so doing any act which would deprive said Ward from the use of said street, and from interfering with or causing damage in any manner to his said property, and for general relief.

And thereupon the Judge of said Court awarded an injunction to enjoin, restrain and inhibit the Ohio River Railroad Company, and all its servants and agents, from constructing any track or tracks and from operating any railroad on Second street in the city of Parkersburg, Wood county, and from in any manner interfering with or causing damage to said plaintiff's property, as complained of in said bill, until a just compensation for said damages arising to said plaintiff from the acts and things thereby enjoined, should be first paid or secured to be paid to him.

And said judge also ordered that the effect of said injunction might be suspended upon the Ohio River Railroad Company giving bond in a penalty of three thousand dollars, with condition to pay to said Ward a just compensation for all damages that he might in any proceeding taken, show himself entitled by reason of the construction and operation of the defendant's railroad on said Second street.

The defendant railroad company demurred to the plaintiff's bill, which demurrer was by the Circuit Court of said county overruled on the 10th day of December, 1887, and the defendant then tendered its answer to the plaintiff's

bill, to which the plaintiff replied generally, and on the said 10th day of December, 1887, the Court without any testimony whatever having been taken in the cause, on motion of the plaintiff, directed an issue in said cause to be tried by a jury to ascertain what damages, if any, the defendant railroad company had caused the plaintiff's property by the construction and operation of its railroad along Second street in front of plaintiff's property. And on the 16th day of December, 1889, a jury was empaneled to try said issue on the law side of said Court, and on the 24th day of December, 1889, said jury rendered a verdict upon said issue in favor of the plaintiff, and assessed the damages at fourteen hundred dollars. The defendant moved to set aside this verdict, which motion the Court overruled, and to which ruling the defendant excepted, and the Court certified the verdict of the jury, and also certified the exceptions taken, to the chancery side of the Court, to be filed in said chancery suit.

And on the 8th day of March, 1889, the defendant again made a motion on the chancery side of the Court, in said chancery suit, to set aside said verdict, which motion the Chancellor overruled, and thereupon the defendant moved the Chancellor to set aside said issue upon the grounds that the same was improperly directed, which motion the Court overruled. And the Court then proceeded to render a decree in said cause against the defendant, the Ohio River Railroad Company, for the sum of fourteen hundred dollars, the amount of damages ascertained by the jury, with interest and costs. And from this decree this appeal and *supersedeas* was obtained.

In its answer the defendant denies all the material allegations of the bill. It exhibited an ordinance of the city of Parkersburg, authorizing it to construct its tracks along Second Street, and averred it was proceeding in strict accordance with said ordinance. It denied that the construction and operation of its road would injure the plaintiff; that no part of his property would be taken; that the property of the plaintiff fronted on Market street, and the railroad was being constructed along the side of the plaintiff's property on Second street.

The first question to be considered is whether the demurrer to the bill was properly overruled. The doctrine upon this subject is well settled by this court in *Spencer* v. *R. R. Co.*, 23 W. Va. 407; *Mason* v. *Bridge Co.*, 17 W. Va. 396; *Arbenz* v. *R. R. Co.*, 33 W. Va. 1, and *Gibbens* v. *R. R. Co. supra* p. 57 (12 S. E. Rep. 1093).

In *Spencer* v. *R. R. Co.*, Judge GREEN points out that the constitution of this State most carefully guards the property of its private citizens against the exercise of the right of eminent domain, when delegated by the State to an Internal Improvement Co., except under the conditions prescribed by the constitution of the State, and that of the United States. He points out the distinction, however, which the phraseology of the constitution establishes between the actual *taking* of private property for public use, and the merely inflicting *damage* upon it. In the one case, that is where the property is actually *taken*, it can not be appropriated, nor used by the company, until just compensation shall have been paid or secured to be paid to the owner. This restriction against appropriating private property for public use until compensation has been paid or secured, does not apply to *damaging* private property, as to which just compensation is guaranteed, and the right of an inquisition by jury of twelve free-holders, but such compensation must be obtained in the manner prescribed by law, and need not necessarily be either paid or secured before the work of internal improvement can be prosecuted, and the injury inflicted.

Applying this principle to the present case, upon precedent and authority, we shall have but little difficulty in determining whether or not it was error to overrule the demurrer to the bill. It is only when the damage inflicted amounts to a total destruction of the value of the property (which is held to be equivalent to actual taking or appropriation) that the owner can resort to a Court of Chancery to vindicate his constitutional rights. The question here then is, whether the allegations of the bill which the demurrer admits to be true are sufficient to bring the case within the rule as stated. Upon the authority of *Mason* v. *Bridge Co.*, and *Gibbens* v. *R. R. Co.*, as above cited,

I think the bill in this case is sufficient, and that the demurrer was properly overruled. In order to test this question as one of precedent and authority, I will place side by side the allegations in Mason's bill, and in the Gibbens bill, and those in the bill we are now considering. In the Mason bill it is charged, "that the defendant declares its intention to erect forthwith and open for travel to the public its said proposed toll-bridge which will be within less than two hundred yards of the plaintiff's ferry; that it is about to erect said toll-bridge with the purpose of diverting from the ferry and appropriating to itself all the tolls paid by all those who travel within a half mile of plaintiff's ferry; thereby taking all the toll which it was the design of the law to secure to plaintiff; that such will be the inevitable effect of the erection and operation of said bridge, and the erection and operation of said bridge by defendant will necessarily damage irreparably plaintiff's said property, and be in derogation of his vested exclusive right as aforesaid; that defendant has refused to make to the plaintiff any compensation whatever."

In the case of *Gibbens* v. *R. R. Co.*, the charge in the bill is as follows: "But in disregard of law, in violation of your orator's rights in the premises, without his permission and against his consent, the said Railroad Co. have commenced and are now vigorously prosecuting the work of obstructing on Ann street, excavating therein the earth and paving for the purpose of erecting piers and trestle work, entailing damages to your orator's property amounting to a destruction of its value, and is equivalent to him of its being absolutely taken by said company."

This is the general charge and the specification or detail of facts is as follows: "Your orator further charges that said work being begun and prosecuted, if allowed to proceed, will work an irreparable damage to your orator's property, will *render it utterly valueless* for the purpose of his said business and for any other business to which such property would otherwise be likely appropriated; that the hazard from fire to his building would be largely increased by engines passing over such a structure; that any ordinary use thereof would be a perpetual nuisance by reason of the

noise from running trains, sparks, smoke and soot emitted from the engine propelling them, by frightening teams, driving away patrons and customers, and so obstructing said street as to deprive your orator and others of free and safe access to his said place of business."

In the present case the charge of the bill is as follows: "Your orator represents that if the said company is allowed to lay its tracks as proposed and located, it will not only deprive your orator of the right to the easement of said Second street adjoining his property, but will also render the buildings almost unfit for the purposes for which they are now used and occupied, on account of the combustible matter, hay, &c., contained and necessarily stored in said buildings while used for their present purpose and which would be easily ignited by sparks from some passing engine, and which your orator could not be entirely secure against, even by the exercise of the greatest caution upon his part, thereby placing said buildings in constant danger of being destroyed by fire, and also because the running of trains along said track and upon said street will have the effect of frightening the horses kept in said stable and keeping them in constant terror and fear; and also shut your orator off from the use of said street and from driving his teams in and out of the door of said stable opening upon the same, as he has hitherto been accustomed to do, and as he is informed he has a right to do; and that said property would for this and other reasons apparent *be rendered entirely worthless* by the laying of said tracks along said Second street and running the trains over the same; and that no one would come to his said livery stable for the purpose of hiring horses and teams when they would have to drive out of said stable immediately upon or alongside of said railroad track along which a locomotive might be coming at any time, and in fact frequently would be thereby endangering life and property, all of which would irreparably damage your orator's property and injure its value."

Upon comparing the allegations in these three bills, it appears to me that it would require an extraordinary amount of hypercritical refinement to say that in one of these cases the allegations are so defective as to render the bill liable

to objection, and open to demurrer, while in the other two cases the averments are sufficient. Unless we are prepared to say that there is a just distinction, or legal distinction, between rendering property "entirely worthless" and rendering it "utterly valueless" we must hold that the case of Gibbens (in which it was held not erroneous to overrule the demurrer) controls and governs this case. To hold otherwise, would be to destroy uniformity of decision, and would have a tendency to render the law a science of ingenuity and super-refinement, rather than one of exactness and precedent.

It is true that in the Gibbens case the bill alleged that the company was insolvent, but did not state facts which proved it insolvent, other than are stated in the bill now before us. The averments of the two respective bills upon this subject, are substantially the same.

Whether the insolvency of the company is in any case a ground for injunction, may well be doubted, since, as Judge GREEN says in *Spencer* v. *R. R. Co.*, if the company, after having taken or materially damaged private property, refuses to pay the damages assessed by a jury, that of itself constitutes good grounds for the interposition of the court of chancery to protect private rights against their appropriation to public use in violation of the letter and spirit of the Constitution. The provision of the Code upon the subject of condemnation fully justifies this opinion of Judge GREEN'S. By examining the 20th, 21st, and 22nd secs. of Chapter 42, upon "Taking Land without Owner's Consent," it will be found that the company condemning the property, has no right to the possession until it has paid or secured the amount of damages assessed by the jury or commissioners. And although the company may *damage* property without payment or security in advance, it can not continue to do so after the damage is proved and assessed or reduced to a judgment; to hold otherwise would be to set at naught the provision of the Constitution which declares that private property shall not be *damaged* for public use without compensation. There can be no doubt therefore that an owner whose property has been damaged after he has obtained his judgent at law

and issued execution, which has been returned no effects may instantly appeal to a court of chancery to restrain the company from further damaging his property by running its trains, or otherwise, (should it be a railroad company), until the damages awarded in the common law suit are paid or secured. Hence the fact of insolvency is, I conceive, an immaterial allegation in such a bill as the one we are now considering.

For these reasons therefore, I hold there was no error in overruling the demurrer and the injunction of a preliminary character, was not improper.

The case of Gibbens settles likewise the legality and constitutionality of the ordinance under which the defendant was proceeding to occupy the street.

Was it erroneous to order an issue to be tried upon the law side as an inquisition *ad quod damnum?* In *Spencer* v. *R. R. Co.* and *Gibbens* v. *R. R. Co.* it was held that the question whether or not the damage was so complete as to amount to an appropriation of the property was a jurisdictional fact, and in the latter case it was held that this question could not be waived, nor could consent confer jurisdiction. In the case of *Farland* v. *Wood, etc.,* decided during the present term, it was held that where such a jurisdictional fact was averred in the bill, it must also be proved, otherwise the court of chancery could afford no relief. Applying these principles to this case, it is manifest that the Circuit Court ought not to have ordered an issue until the plaintiff had proceeded to establish by evidence the jurisdictional fact; the defendant having filed his answer denying all the material allegations of the bill, there was nothing left but to proceed upon the proofs. I hold, therefore, that it was manifestly erroneous to order an issue before the jurisdiction of the Court had been established by proper testimony.

It has been decided that upon motion, to refer a cause to a commissioner, before the plaintiff by his evidence had established at least a *prima facie* case, was error. So, in the present case, the erroneous action of the Circuit Court in ordering an issue is too manifest to require further illustration.

It may be observed also that under the constitutional provision the order should have given to either party who

should desire it the privilege of selecting as jurors twelve *free-holders.* *Mason* v. *Bridge Co.*, 17 W. Va. 426.

With reference to proof of want of title in the plaintiff by introducing the assessor's books and undertaking to prove a *forfeiture,* there was no error in excluding the instruction based upon such evidence, because the evidence was not relevant to the issue which was then being tried. We may remark, also, that all the evidence taken in the cause is not sent up, nor are the facts proved certified to this Court; so that even had it been error not to instruct the jury that the defendant's evidence proved a want of title in the plaintiff, and that such want of title required a verdict against the plaintiff; nevertheless in the absence of the *evidence of the plaintiff,* which might have explained or totally contradicted this evidence of the defendant, we should be bound to disregard totally this assignment of error.

In giving the instruction which the plaintiff asked, there was no error. "The jury are instructed that on the issue in this cause they are to regard the plaintiff as having title to and being the owner of the property in controversy, as alleged and set forth in the bill filed in this cause." There seems to have been a misapprehension as to the character of this proceeding. It was simply an inquisition by a jury (of *free-holders,* if so desired by either party) to ascertain not the *title* to the property, but the amount of *damage,* which would be sustained by its appropriation by the Internal Improvement Company. By looking at the law upon this subject, it will be found that the functions of the commissioners or jury end with the *assessment,* and the *court* determines who is entitled to the amount awarded. Code (1891) ch. 42, ss. 18 to 23 inclusive. The jury is to determine the value of or damage to the *fee.* *Id.* s. 18.

The issue is in the nature of an inquisition on behalf of the public to determine the amount which should be awarded to the condemnee, in consideration of the involuntary appropriation of his private property to the public use through the instrumentality of an internal improvement company, or other recognized agent of the State, to whom she has delegated by general law, or otherwise, the right of eminent domain. 2 Mich. 427; 6 W. Va. 858;

Mills on Em. Dom. § 1.  *B. & O. R. R. Co.* v. *P. W. & K. R. R. Co.*, 17 W. Va. 812, 856.

This consideration leads at once to the conclusion that the action of the court was erroneous in giving an *absolute decree or judgment against the appellant.* By looking at the case of *Mason* v. *Bridge Co.* it will be found that it was reversed for a precisely similar error. *Mason* v. *Bridge Co.* 20 W. Va. 223. See page 224, syllabus 13.

The judgment in this case is in such absolute form, that, though the decree does not authorize execution in term yet as I construe our law upon this subject, the clerk would be justifiable in issuing execution without further authority from the court. Compare secs. 1 and 2 of chap. 139, with sec. 2 of chap. 140 of the Code (1891.)

The act by which damages are ascertained in condemnation proceedings in our State, does not make provision for the issuance of any execution. The reason is obvious; and it is because if the property has not been already appropriated, in the case of a railroad company for example, the company has its option to change the route or forego the improvement. *Cushman* v. *Smith*, 34 Maine, 247. Where the company is enjoined until compensation is made for damage to private property, the company may elect to discontinue, and allow the injunction to be perpetuated; until the right to take or damage the property of the condemnee is *vested* in the company, by payment or deposit of the money or actual occupancy, the property holder has no *vested title* in the damages, and can not therefore issue execution. *Sacy* v. *V. C. Railway*, 27 Vermont 39, and cases there cited. All of this matter is fully discussed and decided in *Mason* v. *Bridge Co.*, 20 W. Va., and I can not better conclude this opinion than by referring to that case.

The order of the Circuit Court directing an issue must be reversed, and all the proceedings thereafter annulled and set aside, and the cause remanded with instructions to allow the parties reasonable time to introduce their proofs, and upon the coming in of the same, to direct an issue, or diminish the bill as may seem proper upon the principles herein directed; and to conduct the further proceedings,

.should an issue be awarded in accordance with this opinion and further *etc., etc.*

REVERSED.   REMANDED.