# CHARLESTON.

WENGER v. FISHER AND OTHERS.

Submitted January 26, 1904.   Decided February 16, 1904.

1.  INJUNCTION—*Public Roads.*
    An injunction is the proper remedy to prevent the location and establishment of a public road through private property, without prior compliance with the requirements of law. (p. 15).

2.  ROADS—*County Court—Suit.*
    In such case, it is not improper to join as defendants the county court or other tribunal, charged with the establishment

and maintenance of public roads, the surveyor of roads of the proper road precinct, and the road contractor. (p. 17).

3. INJUNCTION—*Notice.*

Where a party has actual notice of an order of injunction, although it may not have been yet served, or be defectively served upon him, the order becomes operative on him from that time. (p. 18).

Appeal from Circuit Court, Randolph County.

Bill by John Wenger against Charles Fisher and others. Decree for defendants, and plaintiff appeals.

*Reversed.*

W. B. MAXWELL, for appellant.

HARDING & HARDING, for appellees.

MILLER, JUDGE:

John Wenger, the appellant, presented to the Judge of the circuit court of Randolph County, his bill in chancery, against the appellees, Charles Fisher, Jacob Helmick, and J. W. Goddin, Omar Conrad and Patrick Crickard, as commissioners, composing the county court of said county; and the county court of Randolph County, a corporation, praying that said Fisher and Helmick, their agents, employees, and all other persons, be restrained and enjoined from making changes or alterations in a certain public road, as proposed by them, through plaintiff's land as shown by his bill; and that said county court be also restrained and enjoined from appropriating to public use the plaintiff's land, or any part thereof, without rendering to him just compensation therefor. On the 5th day of March, 1901, the injunction was granted as prayed for. On the 19th day of March, 1901, the required injunction bond was given. On the 21st day of March, 1901, it was approved by the clerk of the court; on that day summons, with the said order of injunction, was issued; on the 26th day of March, 1901, it was served on Fisher; and on the 28th day of the same month, was served on Helmick. It was also duly served on the other defendants.

The plaintiff, in his bill, alleges that he is the absolute owner in fee simple of a tract of land, situate in Middle Fork District of said county, containing sixty-two and one-half acres; that he

bought the land in 1884; obtained his deed therefor some two years afterwards; and has been in the absolute and exclusive possession of said land ever since; that the said Charles Fisher is acting as Surveyor of Roads in precinct No. 1 of said district, under and by virtue of appointment to said office by the said county court; that said Fisher is about to take for the purpose of a public road, a part of plaintiff's said land, without plaintiff's consent; or without having purchased said land from plaintiff; or without having it condemned according to law; or without just compensation therefor having been paid to plaintiff. The strip of land proposed to be so taken, is alleged to be sixty-five rods in length and thirty feet in width, and very valuable to the plaintiff. A diagram of the old road, and the proposed new road is filed with the bill.

The defendants demurred to the bill on the alleged grounds that there is a misjoinder of defendants, and that the bill is without equity. The court overruled the demurrer, and properly so. In *Foley* v. *County Court*, 46 S. E. 246, it is held that, where private property is being taken for public use without compensation, equity has jurisdiction to enjoin the act. In the opinion of the Court, by BRANNON, JUDGE, it is said: This is not a mere trespass, transient and passing, slightly affecting the freehold, because the bill alleges, and the answer admits, that the county was taking the strip of land for permanent public use, without compensation, forever wresting the land from the plaintiff, if her property; and it is settled that where a town or county is taking property for public use without compensation, not merely injuring it, there is no legal remedy answering the emergency, and injunction will lie. *Boughner* v. *Clarksburg*, 15 W. Va. 394; *Yates* v. *West Grafton*, 33 W. Va. 50ff, (11 S. E. 8); *Mason City S. & M. Co.* v. *Mason City*, 23 W. Va. 211; *Ward* v. *Ohio R. R. Co.*, 35 W. Va. 481, (14 S. E. 142); *Spencer* v. *Railroad*, 23 W. Va. 406. An injunction will be granted to prevent the laying out and establishing a road through a farm and improvements, without prior compliance with the requirements of the law in such cases. 1 Spelling Inj. ss. 295, 354. We think there is no misjoinder of parties. Under the law, the county court is charged with the establishment, regulation and maintenance of public roads. Fisher was the road surveyor, and Helmick the road contractor, who was assuming to

open the proposed road on appellant's land, under an alleged contract with Fisher as road surveyor.

Fisher answered the bill, and admitted plaintiff's ownership and possession of the land as alleged. He also admitted that he was road surveyor, and acting as such, but denied that he was about to take the said strip of land for the purpose of a public road without plaintiff's consent. He further averred that the location of the road, marked on the said diagram, "present road," was such as to make the road along that line practically impassable on account of the steepness thereof at certain points, and for other reasons; that respondent, deeming a change of the road from the location necessary, asked and received from plaintiff his unqualified consent that such change should be made from the then location to the line marked as the "proposed new road" on said diagram; that, at the first sale at which respondent offered the making of this proposed new road for sale, plaintiff was a bidder therefor; that said new location places the road on better ground; does not increase the length thereof; reduces the grade; does not require more work to keep it in repair; does not render said road in any respect worse than it was before; and that, on the 9th day of February, 1901, he, as road surveyor, sold the making of said road upon the changed line to said Helmick. Respondent further avers that the change in said road was made with the full knowledge and consent of the plaintiff. The said county court, as individuals, and as such court, also answered the bill and admitted the appointment of Fisher as road surveyor, under the alternate road law of 1881, and his full authority to act as such; that they had knowledge of the change made in the road, complained of by said plaintiff; but were not intimately acquainted with the ground; that they had been informed and believed that said change was made pursuant to law; that the county court did not, by any proceeding, such as condemnation or purchase, acquire the right to make such change; but that they understood that said surveyor was having it done legally and properly, by virtue of his statutory authority; and that if he had exceeded the same, they are in no way responsible therefor. Helmick filed his answer in which he, among other things, says that plaintiff was fully cognizant of the advertising and selling of said road, and of the purchase by respondent of the

making of the same; and that he had completed the making of said road several days before he was served with the order of injunction in the cause. Depositions were taken by both plaintiff and defendants, and filed in the cause.

The determination of the case depends upon the evidence, as to whether or not the plaintiff consented that his land might be taken for the proposed change in the public road. Plaintiff was asked: "Q. State whether or not you consented for the County Court of Randolph County or Charles Fisher or anyone else to change the present road through your land and place it where the map shows the 'proposed new road'? A. No, never, on the contrary I told the County Court I would never consent to it. Q. State whether or not the County Court ever gave you any notice that it proposed to make said change? A. No, sir, never. Q. State whether or not Charles Fisher or any road surveyor or road official of your district, ever gave you any notice that they proposed to make the said change? A. No, sir, they did not." He further testified that the work on the change was commenced soon after February 9, 1901, and was "got done with soon after the 16th day of March—anyhow before the last of March"; that the work was completed on the 25th or 26th of March; that Jacob Helmick was the contractor who made the change; that the road, as changed, runs ninety-eight rods through his land; that about fifty or fifty-three rods of it were completed when Fisher and Helmick were notified of said injunction; and that plaintiff, on the 16th day of March, 1901, served notice in writing on Fisher and Helmick that he had, on the 5th day of March, 1901, obtained from the judge of the circuit court the injunction. The notice referred to is a part of the record; bears date on the 5th day of March, 1901; is addressed to Charles Fisher and Jacob Helmick; and notifies them that plaintiff had, on that day, obtained from the judge of the circuit court of Randolph county, an injunction, restraining and enjoining them, and their employees from making the change in the public road through plaintiff's land, upon which they were then engaged. The notice is signed by said Wenger, and appears to have been served on Fisher and Helmick in person, by copies thereof, on the 16th day of March, 1901.

On behalf of defendants, said Fisher testified that he was authorized by the county court to make the change in the road

on Wenger's land, without any extra expense; and that he also had Wenger's consent; that Wenger agreed to the change when he bought that section of road. It appears from the record that at a road sale made by Fisher on the 4th day of April, 1899, said Wenger, the plaintiff, bid in sections 2 and 3, said section 2 being the road running through his land. The specifications of No. 2 state: "This section has a change to be made in it near John Wenger's place," etc., "sold to John Wenger." The bond of Wenger .given as contractor recites that "the above bound John Wenger was on the 4th day of April, 1899, awarded the contract for repairing and keeping in repair section 2 in precinct 1 of Middle Fork District and also to make change in said section for the sum of $17.00 per year for the term of three years." It is also proved that, at the time of this sale, the said proposed change had not been located; that when Wenger made his said contract for section 2, he was not shown what the change was to be; that the change was not located by the road surveyor until about the first of June, following; and that Wenger then objected to a change, and wrote Fisher a letter objecting to the work. It is further shown that Wenger did no work under his said contract or otherwise on said alteration, but surrendered his contract, and that about the 9th day of February, 1901, the work on the road as attempted to be changed by the road surveyor, was sold to defendant, Helmick. The notice under which said second sale was made recites that "the undersigned, Charles Fisher, surveyor of roads, will sell to the lowest and best bidder, the constructing of a piece of public road near John Wenger's on the Pickens and Newlon road, distance not exceeding one-fourth of a mile, said change was made by the Randolph county court at its last regular session, and ordered made," etc. There is a number of other depositions in the record, showing the advantage of the change to the public, and that when Wenger bought section 2, at the first sale, it was fully understood that a change was to be made in the location of the road. The said contract indicates as much. But it is undisputed that no change had then been located, or agreed upon between Wenger and Fisher; and that the surveyor did not go upon the land of Wenger to locate the change until thee following June.

The evidence and circumstances of the case, including the contradictory statements in the answers, preponderate very much in favor of Wenger's contention that he, at no time, consented to the location of the change in the road as made, and as shown by the diagram filed.

An evasion of the injunction is sought by showing that the order had not been served on Fisher and Helmick until after they had completed the work therby enjoined. It is proved, and not disputed, that they had notice of the injunction before the work was much more than half done.

Beach on Injunctions, Vol. I, s. 248, says: "Persons who have actual knowledge of the existence and effect of an injunction order, are bound by it, though it is not personally served on them." In considering the question of a defendant's liability for a breach of injunction, it is to be borne in mind that the injunction becomes operative from the time of the order being made, and not from the date of the writ itself, or from the time of its being drawn up. The mandate of the court being effectual upon all parties having notice thereof, from the time it is given, to fix defendant's liability for a violation, it is only necessary to show that he was actually apprised of the existence of the order at the time of committing the acts constituting the violation. High on Inj. 2d Vol., s. 1421; *Osborn* v. *Glasscock,* 39 W. Va. 761.

It seems that the injunction should not have been dissolved. Therefore, the decree of the circuit court must be reversed and set aside, and the injunction, granted by the judge thereof, perpetuated here.

*Reversed.*