# CHARLESTON

## HARMAN v. CARETTA RAILWAY COMPANY.

Submitted September 12, 1906. Decided February 19, 1907.

1.  EMINENT DOMAIN — *Injunction*— *Trespass* — *Insolvency*—*Irreparable Injury.*

    It is not necessary that a bill for injunction to prevent the location, construction and use of a railroad over the lands of the plaintiff, by a corporation before it has complied in all respects with the requirements of the statute in taking proper condemnation proceedings for the purpose, to allege that irreparable injury will be sustained thereby, neither is it necessary to allege the insolvency of the trespasser. (p. 361.)

2.  Same.

> It is sufficient to allege the taking and occupation of the land by the corporation seeking to exercise the right of eminent domain in respect to such land without first having complied with the provisions of the statute under which only it can exercise such right.  (p. 361.)

Appeal from Circuit Court, McDowell County.

Suit by the State and W. F. Harman against the Caretta Railway Company and others.    Judgment for defendants, and plaintiff W. F. Harman appeals.

*Reversed.    Remanded.*

Chapman & Gillespie and S. M. B. Coulling, for appellant.

Rucker, Anderson, Strother & Hughes, Stokes & Sale and W. B. Kegley, for appellees.

McWhorter, Judge:

W. F. Harman, claiming to be the owner in fee of a tract of 57.60 acres of land in McDowell county and the owner of one undivided one-half of another tract adjoining the same containing 111.49 acres, filed his bill in the circuit court of McDowell county against the Caretta Railway Company, a corporation, Virginia-Pocahontas Coal Company, a corporation, George L. Carter and A. Collier, joining with him as co-plaintiff in said bill the State of West Virginia as being interested in a part of the land involved by reason of alleged forfeiture to the state for the non-payment of taxes and omission from the commissioner's books of said county; alleging that plaintiff Harman's title to the 57.60 acres was conveyed to him by J. W. Hicks and A. B. Buchanon, who also conveyed their interest in the said 111.49 acres adjoining the said 57.60 acres, describing the same by metes and bounds, a copy of which description was filed as an exhibit with the bill; that said two tracts of land were front lands as to the Iaeger Southern Railway Company, then constructed and being constructed up the Dry Fork of Tug Fork of Sandy River; that back of said two tracts of land as to said Iaeger Southern Railway Company lies the holdings—several thousand acres—of the Virginia-Pocahontas Coal Company; that to ship on the Iaeger Southern Railway Company timber, lumber or coal from the land of the Virginia-Pocahontas Coal

Company it was necessary to pass over the said two tracts of land of said plaintiff; that the Caretta Railway Company filed in the circuit court of McDowell county two applications to condemn a strip of land for the right of way for a railroad through both of said tracts of land as well as through the lands of other parties mentioned in said applications, the applications being similar so far as the interest of plaintiff was concerned; that plaintiff was made a party defendant and appeared to said applications; that commissioners were appointed in one case to ascertain just compensation for the land proposed to be taken, subject, however, to plaintiff's right subsequently to test the right of applicant to have said land condemned; that plaintiff filed his answer to said applications; that issue was joined between him and the Caretta Railway Company, and upon the hearing of the case the court held that said railway company was not entitled to condemn said strip of land because it sought to take same for private and not for public use and the judgment of the court was entered accordingly. Plaintiff's defense to said applications was that the Caretta Railway Company would not be and was not intended to be a public railway but a private road for the exclusive benefit of the Virginia-Pocahontas Coal Company, which was made a party to said applications; that the managers and directors of the latter company were the managers and directors of the Caretta Railway Company, that it was owned and controlled by said Virginia-Pocahontas Coal Company; that with one application pending and the other dismissed, work of grading a railroad along the right of way mentioned in the applications and sought therein to be condemned, beyond the boundary lines of said tracts, had steadily continued under the supervision of A. Collier, agent of the Virginia-Pocahontas Coal Company and the Caretta Railway Company, and the agents and employees of said company had graded said railroad up to the lines of said two tracts of plaintiff's land, and on June 12, 1906, commenced grading on said two tracts; that plaintiff notified the foreman in charge of the work on said date and requested him to stop work on said two tracts, but was told by said foreman that his instructions were to grade through said tracts and he would have to continue the work until he was stopped by the law; and alleging that unless they were

stopped the Caretta Railway Company and the Virginia-Pocahontas Coal Company would have the road graded as soon as possible through said two tracts and have in operation a railway over the same before the plaintiff could assert his rights thereto and prevent them from so doing; that George L. Carter owned all the stock, except four shares, of the Caretta Railway Company and was the largest stockholder of the Virginia-Pocahontas Coal Co.; that he controlled and directed the policies of the two said companies; that A. Collier was general superintendent of both of said companies and well knew of the proceedings had on said applications and plaintiff's rights in the premises; that plaintiff had a tenant living in an house on the 57.60 acres and also a saw-mill and lumber yard on the 111.49 acres and an house occupied by his hands; that no one else had possession of the 57.60 acres, but that the Virginia-Pocahontas Coal Company also had a tenant on the 111.49 acres; that plaintiff's title to the 57.60 acres and one undivided half of the 111.49 acres was superior to any other claimant's thereof and that he was ready and willing to pay off and discharge all the unpaid taxes, dues and demands of the state thereon; and prayed that the defendants, the Caretta Railway Company and the other defendants, their agents, servants and other employees be enjoined and restrained from constructing said railroad through said two tracts of land and if before notice of injunction they had constructed said railroad then they be enjoined from operating any cars upon said road or from in any way using the same, and from trespassing on same, and for general relief.   Upon the filing of the bill, on the 15th day of June, 1906, the judge of the court in vacation granted a restraining order according to the prayer of the bill.

On the 28th of June, 1906, the defendants gave the plaintiffs written notice that on the 5th of July, 1906, the defendants would move the judge of the circuit court of McDowell county, in vacation of said court, to dissolve the temporary restraining order awarded in this case on the 15th of June, 1906. In pursuance of such notice, the plaintiff Harman appeared to resist said motion, the plaintiff State of West Virginia failing to appear, and thereupon the defendants by counsel filed their demurrer in writing in which the plaintiff Harman joined and the judge, being of the opinion

that said demurrer was well taken, decreed that the temporary restraining order be dissolved; and it was certified that upon the hearing of the motion all the exhibits with the bill not having been filed, plaintiff then filed the same. From which decree dissolving the injunction or restraining order the plaintiff Harman appealed.

The only question arising in the case is whether the judge erred in dissolving the restraining order. No action was taken or could have been taken in vacation concerning the demurrer further than the expression of the opinion of the judge that the demurrer was well taken. The Constitution and Statutes of this state are very jealous of the rights of its citizens and all others in property, and while it provides for the taking of private property for public use it is very careful that the corporation desiring to take the property shall not enter upon or take and use the same for the purpose specified in the application for the taking thereof until a report of commissioners appointed for the purpose shall have been made and the compensation therein reported, paid to the party or into court. "Equity has jurisdiction to restrain the taking or damaging of private property for public use without just compensation, even though an action at law will lie for the recovery of damages in such cases, after the property has been so taken or damaged."—*Mason* v. *Bridge Co.*, 17 W. Va. 396, syl. pt. 3. In *Wenger* v. *Fisher*, 55 W. Va. 13, 46 S. E. 695, syl. pt. 1, it is held: "An injunction is the proper remedy to prevent the location and establishment of a public road through private property, without prior compliance with the requirements of law." And in *Spencer* v. *R. R. Co.*, 23 W. Va. 406, syl. pt. 1, it is held: "If a railroad company take the land of any person without having first paid a just compensation to the owner or having secured it to be paid in the manner prescribed by law, the owner as a matter of right in any such case may enjoin said company from using said land for its purposes till the company have so paid or secured to be paid such just compensation, as by section 9, Article III. of our Constitution, companies are required to pay or secure to be paid before taking such land; and the observance of this provision of our Constitution can be enforced in no other manner than by the granting of such injunction by a court of chancery." In

the light of these authorities and many others which might be cited it is not necessary that a bill praying an injunction to prevent the location, construction and use of a railroad over the lands of the plaintiff should allege that irreparable injury will be sustained by the lands in question by reason of the acts complained of, neither is it necessary to allege the insolvency of the trespasser as it is insisted upon in the demurrer of the defendants. It is enough to allege the taking and occupation of the land by the corporation seeking to exercise the right of eminent domain in respect to such land without a compliance with the provisions of the statute under which only it can exercise such right, and appropriate to its own use the property of another.

The judge erred in dissolving the injunction and the order dissolving it must be reversed and the cause remanded for further proceedings to be had therein according to law and the rules governing courts of equity.

*Reversed.   Remanded.*