## CHARLESTON.

OSBORN *v.* GLASSCOCK *et al.*

Appeal of HYRE.

Submitted June 15, 1894.—Decided December 18, 1894.

1. LIS PENDENS.

   Section 13 of Chapter 139 of the Code requiring a memorandum of a *lis pendens* to be filed for record, before it can bind or affect a purchaser of real estate for valuable consideration without notice has no application to personal property, and therefore none to a portable steam saw-mill.

2. INJUNCTION—NOTICE.

   Where a party has actual notice of an order of injunction, although it may not have been yet served or be defectively served upon him, the order becomes operative on him from that time.

3. INJUNCTION—SEPARATE ESTATE.

   Such an order is sufficient incipient sequestration of the visible personal separate estate of a married woman, such estate then being specifically proceeded against by her creditor by bill in equity.

4. INJUNCTION—SALE—TITLE.

   A purchaser of such property at a sale made under a deed of

trust, with knowledge of the order of injunction, acquires thereby only such right, as against the plaintiff in the suit, as the equity of the trust-creditor may, on hearing the cause, be held to confer.

5 Separate Estate—Married Woman.

A married woman may sell, grant, and transfer her separate personal property as if she were a single woman, without her husband joining in such deed or other writing.

6. Separate Estate—Married Woman.

The court, having taken control of such specific personal estate of the married woman for the purpose of subjecting it to the payment of the claims of her creditors who had brought suits for that purpose, should, as the law then was, have ascertained and determined their respective priorities, and then applied the proceeds of sale had under the direction and control of the court to the satisfaction of these claims, in the order in which they have been ascertained to be entitled.

A. J. Valentine for appellant.

W. B. Maxwell and A. B. Parsons for appellees:

I.—*Recording of deed of trust in county to which chattels are removed must be made within three months.*—Code, c. 74, s. 7.

II.—*The question here presented has been under review, in different aspects, under Virginia statutes.*—1 Leigh, 443; 5 Leigh, 520; 10 Leigh, 497; 2 Gratt. 415.

But does not seem to have been before this court.

III.—*Effect of suit to subject separate estate of married women to sale.*—19 W. Va. 366; 27 W. Va. 555; 31 W. Va. 16.

IV.—*Registry of deeds of trust.*—Code, c. 73, s. 2, 5; 26 W. Va. 807.

V.—*Agent of married woman.*—Mech. Agen. §§ 56, 276, 273, 291.

VI.—*Effect of notice of injunction.*—Kerr Inj. 641, et seq.; Hill. Inj. 158.

Holt, Judge:

These were three separate suits in equity brought in the Circuit Court of Tucker County—one by Osborn, one by H. H. Taylor, and the other by W. T. Stout—against Mrs. M. A. Glasscock, to subject to the payment of their several debts certain property named and described as her

separate estate, namely, one portable steam saw-mill, and its accompaniments, and a tract of land of ninety eight acres, alleged to have been conveyed by her to her sister-in-law with intent to defraud her creditors. Such proceedings were had that by decree entered in the suit of Taylor on the 15th day of March, 1892, plaintiff abandoned his claim and all right to further proceed against the tract of land of ninety eight acres, and the court ascertained and fixed the amount that plaintiff Taylor was entitled to recover against the separate estate of defendant Mrs. M. A. Glasscock at five hundred and thirty two dollars and twenty seven cents, with interest from that date, and decreed that, unless it was paid within ten days after the adjournment of the court, plaintiff could sue out execution therefor, to be levied upon her separate personal estate, consisting of one steam saw-mill and fixtures, complete, as agreed by the parties in open court, to be sold for one third cash, and the residue upon a credit of six and twelve months, *etc.*

Thereupon the court on the application of L. J. Hyre, who claimed the saw-mill and asked to be made a party defendant, gave him leave to suspend the sale by delivering to the officer a proper suspending bond in penalty equal to double the value of the saw-mill according to section 4 of chapter 107 of the Code. This bond in the penalty of one thousand dollars, Hyre, with his sureties executed and delivered to the officer on the 15th day of April, 1892. An injunction had been granted restraining Coberly, the trustee, from selling the saw-mill, on the 16th of September, 1891. On the 22d September, 1891, the injunction-bond was given; and the summons with the restraining order indorsed was served on Coberly, the trustee, on the 5th day of October, 1891.

On the 1st Monday in April, 1892, L. J. Hyre filed his petition against W. H. Taylor, M. A. Glasscock and V. A. Glasscock as defendants, praying that it might be filed in the chancery cause of Taylor and treated and read as a petition for the purposes of trying the right of property to the steam saw-mill and a cross-bill and answer to plaintiff Taylor's bill; that Taylor and the other defendants should

be required to answer; that the title to the saw-mill be declared to be in petitioner, and said saw-mill be released from the levy of the execution; and for general relief, alleging that the suspending bond had been given as required.

In this petition he sets up that Mrs. Glasscock by her husband, W. M. Glasscock, acting as her agent by deed of trust dated 28th February, 1890, conveyed or transferred the mill then in Randolph county to D. E. Coberly, trustee, to secure to A. J. Elbon the payment of the sum of seven hundred and eighty five dollars, in various payments; that the mill was removed to Tucker county on the —— day of February, 1891, where it was on the 5th day of October, 1891, sold by the trustee to petitioner Hyre for the sum of two hundred and fifty dollars; that he paid the same, and the mill was then and there delivered to him, with absolute and full control, which he has since so held up to that time; and that, of all these transactions H. H. Taylor and M. A. Glasscock had full notice. He further alleges, that the demand of plaintiff Taylor, on which his judgment was based, had been fully paid off and satisfied long before the institution of Taylor's suit; that the suit was brought in pursuance of a fraudulent combination on the part of Taylor and Mrs. Glasscock aided by her husband to sell the saw-mill of petitioner and turn over through Taylor the proceeds to Mrs. Glasscock, for the express purpose of defrauding petitioner out of his property.

The parties appeared and answered denying the fraud alleged, and the various issues were made up. Many depositions were taken, and other evidence put in. And, neither party requiring a jury, the four cases (Hyre's petition being treated as one) came on to be heard together on the 14th day of March, 1893, all on various papers formerly filed and read, including a *lis pendens* in each of the three causes, recorded in the clerk's office of the County Court of Tucker county on the 6th day of April, 1891, and embracing a description of the steam saw-mill, *etc.* mentioned in the bills. The bill of injunction of Osborn set out the saw-mill as the separate property of Mrs. Glasscock, and the deed of trust thereon to Coberly, trustee, and al-

leges that the deed of trust was given on the 28th day of February, 1890, while the saw-mill was in Randolph county; that it was removed to Tucker county in February, 1891; that the deed of trust was not admitted to record, if at all legally and properly until the 22d day of August, 1891. See section 5 of chapter 74 of the Code, on which plaintiffs rely.

The court, on full hearing, decided against the claimant Hyre dismissing his petition with costs; also ascertained the respective amounts Stout and Osborn were entitled to recover respectively against said mill as the separate estate of Mrs. Glasscock; entered its final decree for the sale of the mill under execution, *etc.*

From these decrees, Hyre obtained this appeal, claiming that his title to the mill, as a purchaser thereof at the sale made by trustee, Coberly, under the deed of trust, was good and valid, as against the claims of these three plaintiffs as creditor of Mrs. Martha A. Glasscock, the grantor in the deed of trust, and that the court erred in holding otherwise.

The material facts seem to be as follows: Bernard W. Fisher and wife, by deed dated and acknowledged on the 5th day of March, 1891, conveyed to the defendant Martha A. Glasscock a certain tract of land situate in Randolph county, containing ninety eight acres. This deed was admitted to record on the 3d day of August, 1891. By deed dated 1st day of August, 1891, Martha A. Glasscock and her husband, W. M. Glasscock, sold and conveyed the tract of ninety eight acres to her sister-in-law, V. A. Glasscock, of Reno county, state of Kansas, in consideration of the recited sum of one thousand dollars cash in hand paid. This deed also was admitted to record on the 3d day of August, 1891. On the 28th day of February, 1890, A. J. Elbon sold to Martha A. Glasscock a portable saw-mill then located in Randolph county; and by deed of trust purporting to be made by W. M. Glasscock, agent for Martha A. Glasscock, but signed, sealed, and acknowledged by W. M. Glasscock, on the 1st day of March, 1890, this mill was conveyed to D. E. Coberly, trustee, to secure to Elbon the payment of seven hundred and eighty five dollars to be paid as follows:

One hundred and fifteen dollars on April 15th; one hundred and twenty five dollars, April 25th; one hundred and fifteen dollars, July 15th; one hundred and twenty five dollars, August 15th; one hundred and fifteen dollars, October 15th; ninety five dollars, November 15th; and ninety five dollars to be paid December 15th—all in the year 1890; all evidenced by notes, and providing, if any of said notes were not paid when due, the trustee was to sell the mill, on thirty days' notice, at public auction, for cash, to the highest bidder, after having been requested so to do by A. J. Elbon, the creditor. This deed of trust was admitted to record in Randolph county on the 1st day of May, 1890. The mill was removed to Hulings, in the county of Tucker, on the —— day of February, 1891, but the trust-deed was not admitted to record in Tucker county until the 22d day of August, 1891.

As the pleadings and proceedings in the four cases determine some of the important questions presented in this record, it becomes necessary to refer to them with some particularity of detail.

On the 6th day of August, 1891, the appellee H. H. Taylor sued out his summons to answer a bill in equity against Martha A. Glasscock, returnable to first Monday in September, 1891, which was returned "Executed" on 17th August, 1891. On first Monday in October, 1891, plaintiff Taylor filed his bill in equity against defendants Martha A. Glasscock and V. A. Glasscock. In this bill he alleges, that on the 3rd day of January, 1890, defendant M. A. Glasscock and her husband, W. M. Glasscock, gave their certain single bill, whereby they jointly and severally promised to pay plaintiff the sum of four hundred and seventy dollars one day after date, on which a suit at law was pending against W. M. Glasscock—that Martha A. Glasscock was the owner of a large amount of personal property consisting of a steam engine and saw-mill with all appliances complete, then situated in the town of Hulings in Tucker county, also cows, horses, household, and kitchen furniture, and probably other property—that she was the owner of ninety eight acres of land situate in Tucker county—that the purchase-money for which Fisher

had in his deed of conveyance retained a vendor's lien, had been fully satisfied—that plaintiff's debt is due and remains wholly unpaid—that the sale and conveyance made by Martha A. Glasscock to her sister-in-law, V. A. Glasscock, of the state of Kansas, was made with the intent to defraud, hinder and delay her creditors especially the plaintiff—that no money was paid—and setting out various facts supposed and alleged to be evidence of such fraudulent intent, and exhibits with his bill a *lis pendens*, recorded on the 6th day of August, 1891, in which are described the ninety eight acres of land, also her personal property, mentioned and described as in her bill, describing and designating particularly and definitely only the steam portable saw-mill and its appliances, on the line of the Hulings Railroad, in Black Fork district, in Tucker county. Plaintiff prayed that the amount of his debt might be ascertained and decreed him; that the personal property might be sold, and the real estate rented, and proceeds be applied in satisfaction of his debt; and for general relief.

Some time before the 5th day of October, 1891 (I infer, about the 22d day of August, 1891) E. E. Coberly, as trustee, took possession of the steam saw-mill near the town of Hulings, where the mill was located, and, by written notice, advertised that in pursuance of the deed of trust he would on the 5th day of October, 1891, on the premises, proceed to sell the mill at public auction for cash.

On the 17th day of September, 1891, appellee W. F. Stout instituted his suit in equity in Tucker Circuit Court against Martha A. Glasscock, W. M. Glasscock, A. J. Elbon, H. H. Taylor, W. B. Fisher, A. H. Osborn, E. D. Talbott, and W. B. Maxwell, trustee, and on the 1st Monday in October, 1891, filed his bill seeking to enforce payment out of the separate estate of Martha A. Glasscock of a note executed to plaintiff by her and her husband for one hundred and thirty five dollars, dated on August 9, 1890, due in thirty days; also that one of the notes for one hundred and fifteen dollars due July 15, 1890, which was executed by Mrs. Glasscock to A. J. Elton for the saw-mill, and one of those secured by

the deed of trust, which note had been assigned to plaintiff Stout by Elbon, credited by ten dollars. He charges that she owned the ninety eight acres of land;—that all the purchase-money had been paid to defendant B. W. Fisher, but the lien retained in the conveyance had not yet been released;—that on the 6th day of March, 1891, the defendant W. M. and Martha A. Glasscock had conveyed the ninety eight acres to defendant W. B. Maxwell, trustee, to secure to defendant E. D. Talbott the payment of a note for three hundred dollars executed by them to Talbott —alleging that the plaintiff was not informed whether it had been paid or not, and that the defendant, Martha A. Glasscock, was indebted to various other creditors. The plaintiff makes the same allegations as plaintiff Taylor as to Mrs Glasscock's ownership of the steam saw-mill located then at the town of Hulings, but no mention is made of the deed of trust; but he attacks as fraudulent and void the conveyance made by Martha A. Glasscock of the ninety eight acres to her sister-in-law, V. A. Glasscock, and prays that it might be set aside, his debts decreed him as a lien on her personal property and her land; that the one might be sold, the other rented, and his claims paid out of the proceeds, and for general relief. He also had recorded a *lis pendens* on the 17th day of September, 1891, but no mention is made of it in his bill.

On the 16th day of September plaintiff A. H. Osborn presented to the Circuit Court judge, in vacation his bill of complaint against M. A. Glasscock, W. M. Glasscock, A. J. Elbon and D. E. Coberly, trustee, alleging that Martha A. Glasscock and her husband had on April 22, 1891, executed to plaintiff their note for one hundred and eighty four dollars and eighty cents, due day after date. He makes the same charges as to the conveyance of ninety eight acres to V. A. Glasscock being made with intent to defraud, hinder, and delay plaintiffs and other creditors. He says that he instituted his suit on the 10th day of August, 1891, and on that day filed his notice of *lis pendens*, which is exhibited with his bill. But that suit was against Martha A. Glasscock alone. He charges the giving of the deed of trust on the steam saw-mill; that the deed of trust

was given on the mill when in Randolph county, where it was recorded; that it had been removed into Tucker county more than six months before the 10th day of August, 1891; that the deed of trust was not recorded in Tucker county until the 22d day of August, 1891; that it was void upon its face, and that he had no actual knowledge of it before that time. He alleges that D. E. Coberly, as trustee, has advertised the mill for sale at the town of Hulings, where it is situated, to satisfy the debt of A. J. Elbon, the trust-creditor, and exhibits with his bill a copy of the advertisement of sale to be made on October 5, 1891, by Coberly, trustee. He prays for an injunction to restrain the trustee and others from selling the mill; that the deed to V. A. Glasscock for the ninety eight acres may be set aside, his debt paid, *etc.*, and for general relief.

The injunction was on the 16th day of September, 1891, awarded by the judge in vacation, to take effect on giving bond, *etc.* The bond was given on the 30th day of September, 1891, and the summons issued on that day, with the injunction order indorsed thereon. It was served on M. A. Glasscock and W. A. Glasscock on the 5th day of October, 1891, and on D. E. Coberly, the trustee, on the same day, but not in person, but by leaving a copy for him, with a member of his family, *etc.*, D. E. Coberly not being found there. It turns out that he had made the sale of the mill on that day to L. J. Hyre, and did not receive the summons until he returned home from the sale, in the evening of that day.

On the 14th day of March, 1893, the following decree, dismissing the petition of L. J. Hyre, from which he obtained this appeal, was entered: The decree dismisses the petition of L. J. Hyre, with costs, and decrees against defendant Mrs. M. A. Glasscock, in favor of plaintiff W. F. Stout and plaintiff A. H. Osborn, for their claims, awarding executions against her separate estate, having already decreed against her, in favor of plaintiff Taylor, but does not specify in what order they are entitled to be paid out of the proceeds of the sale of the mill.

The main ground of error assigned by appellant, Hyre, is that the court decided that he had no claim or right to

the mill, good and valid as against the execution levied thereon in favor of plaintiff H. H. Taylor. The first objection made to the bill of appellant, Hyre, is that the deed of trust attempted to be given is invalid. It is as follows:

"This deed, made this 28th day of Feb., in the year 1890, between W. M. Glasscock, agent for M. A. Glasscock, his wife, of the one part, and D. E. Coberly, the trustee, of the other part, witnesseth, that the said W. M. Glasscock, agent for M. A. Glasscock, doth grant unto the said D. E. Coberly, the trustee, the following property (describing the steam saw-mill) to secure to A. J. Elbon the purchase-money, viz., seven hundred and eighty five dollars in various payments, the last one, of ninety-five dollars, to be paid Dec. 15, 1890; and, if any of said notes be not paid when due, the trustee shall sell said mill in thirty days, by being notified by the said A. J. Elbon, at public auction, to the highest bidder for cash.

"Witness the following signatures and seals:

"Signed and sealed by M. A. Glasscock and by W. M. Glasscock, and duly and formally acknowledged by Mrs. Glasscock, as her act and deed, after having it fully explained to her, and also by the husband, on the 1st day of March, 1890, in Randolph county, and there admitted to record on the 1st day of May, 1890, and in Tucker county, to which the mill had been removed in Feb., 1891, on the 22nd day of Aug. 1891."

The deed of trust, though informal, is certainly valid as the deed of Mrs. Glasscock. The most informal instrument will be regarded, in law, as mortgage, if it shows a sale was made as security, and here this clearly appears on the face of this instrument. See Jones, Chat. Mortg. § 34; *Comron* v. *Standland*, 103 N. C. 207 (9 S. E. Rep. 317); *Merrill* v. *Ressler*, 37 Minn. 82 (33 N. W. Rep. 117.) Here Mrs. Glasscock signed, sealed, delivered and duly acknowledged this instrument as her own proper act and deed, in which she was named as grantor, but by an agent. If this deed of trust of Mrs. Martha A. Glasscock, had been a conveyance of real estate, it would have passed nothing, for the certificate of acknowledgement is wholly wanting in what was then an essential part, viz., that she had willingly exe-

cuted the same, and does not wish to retract it; but the counsel seem to overlook the fact that the only property thereby attempted to be conveyed was the separate personal estate of Mrs. Glasscock, while section 4 of chapter 73, as it then was (see Code, Ed. 1887) relates only to a writing purporting to convey real estate, and moreover, by section 3 of chapter 66 of the Code (see Ed. 1891) she could convey this portable saw-mill in the same manner and with like effect as if she were unmarried; and, not being real estate, it was not necessary for her husband to join therein. Therefore, it was duly admitted to record in Tucker county, where the mill then was, on the 22d day of August, 1891.

The second objection made to the title of Hyre is that the steam-mill was removed to Tucker county in February, 1891, and the deed of trust was not, within three months after such removal, admitted to record in Tucker county— not until the 22d day of August, 1891, after the expiration of six months, instead of three; and, therefore, by section 7 of chapter 74 of the Code, the deed of trust, for so long as it was not admitted to record in Tucker county, was void as to plaintiff Taylor, and the other creditors of Mrs. Glasscock; and by section 9 of chapter 74 the word "creditors" extends to and embraces all creditors who, but for the deed or writing would have had a right to subject the property conveyed to their debts. Taylor's suit was instituted against Mrs. M. A. Glasscock by issuing summons on the 6th day of August, 1891, which was served on the 17th day of August, 1891, and his *lis pendens*, in which he specifically sets forth and describes the steam saw-mill, was admitted to record on the 6th day of August, 1891. The bill was filed on the first Monday in October, 1891; summons returned, "Executed on Mrs. M. A. Glasscock," the debtor; and order of publication taken against Mrs. V. A. Glasscock, the grantee of the ninety eight acres. The law requiring a memorandum of the *lis pendens* to be recorded was introduced as part of the Code of 1849, without the recommendation of the revisors (see section 5, c 186, Code 1849. See Code, Ed. 1860, c. 186, § 5) attachment having been added by Act 1850–1; section 13, c. 139, present law (Code, Ed. 1891). It is seen that it is confined to real

estate ; that it never had, and does not now have, any application to personal property, and therefore has no bearing whatever in the case, on the only point now involved.

Our first case on the subject of *lis pendens* is *Lyne* v. *Jackson,* 1 Rand. (Va. 1822) 114, soon followed by *Newman* v. *Chapman* (1823) 2 Rand. (Va.) 93, which has remained a leading case on the subject, and, together with *Murray* v. *Ballou,* 1 Johns. Ch'y 566, is very frequently cited. In *Newman* v. *Chapman,* it is said that the rule of *lis pendens* is founded upon its necessity to give effects to the judgments and proceedings of a court of justice ; that without such a rule they would be rendered aboritive, where the recovery of specific property is the object. The reason and necessity of the application of the rule of *lis pendens* to personal property, with certain exceptions, such as negotiable securities, would seem to be at least as great as its application to real property. See Freem. Judgm. § 194, and note ; *Newman* v. *Chapman,* 14 Am. Dec. 766, 779.

Yet quite a number of authorities deny its application to personal property. In Benn. *Lis Pend.* c. 5, p. 126 *et seq.,* there is quite a full citation and review of authorities on this point ; the author reaching the conclusion that the weight of authority is in favor of the application of the rule to personal property, with certain exceptions, such as negotiable securities, *etc.* *French* v. *Loyal Co.,* 5 Leigh, 627, was decided in 1834, and held, among other things, (1) that the *lis pendens* could only affect a purchaser of the subject in controversy, who purchased from a party to the suit ; (2) that the *lis pendens* must be judiciously and diligently prosecuted.

In *Bank* v. *Craig* (1835) 6 Leigh, 399, it was held that the effect of the rule is to subject the *pendente lite* purchaser of the subject of the suit to a decree only in that suit, not in another.

In *Smith* v. *Browne* (1838) 9 Leigh, 293, the inference is that in a proper case it applied to personal property.

In *Stout* v. *Vause* (1842) 1 Rob. (Va.) 169, an amended bill was filed ; but before that was done the absent defendant, whose land was sought to be subjected to sale, return-

ed, and, for a valuable consideration, sold and conveyed the land. It was held the rule did not effect such a purchaser, because he had purchased before the proceedings were had.

The case of *Phillips* v. *Williams* (1848) 5 Gratt. 259, was a case of long standing, and, no doubt, of hardship on the *pendente lite* purchaser, in which the land was charged with an annuity, and was directed to be sold, without noticing such purchaser. . This case, no doubt, had something to do with the act requiring the recordation of a memorandum of the *lis pendens.*

From the case of *Currington* v. *Didier*, (1851) 8 Gratt. 260, the inference might be drawn that the rule was regarded as applying to personal property, and there is no doubt that it was held applicable to slaves. See *Smith* v. *Browne* (1838) 9 Leigh, 293. I do not regard this point in the case as important, so far as appellant L. J. Hyre is concerned, for his attempted purchase was at a sale which the trustee, Coberly, had been enjoined from making.

The order of injunction was served on Coberly, the trustee, on the evening of the day on which he made the sale, but after it had been made; but the evidence shows that after he had taken possession for the purpose of selling, and had advertised the sale, but before the sale, he was told of the bill of injunction, and that the order of injunction restraining the sale under the deed of trust had been granted. That such actual notice of the restraining order is of binding fource, though not served, is well settled, though not for proceeding against him for contempt. See 2 Daniell, Ch'y Pr. (6th Am. Ed.) 1684, note a. It is sufficient for the court to know that the person enjoined had actual knowledge of the order. 2 High, Inj. §§ 1422, 1444; *Mead* v. *Norris*, 21 Wis. 310. The sale made by Trustee Coberly was therefore made in violation of the order of injunction entered and perfected on the 30th day of September, 1891. See *Turner* v. *Gatewood*, 8 B. Mon. 613 ; *Byne* v. *Byne*, 54 Ga. 257. So that the sale or attempted sale by the trustee should have been held for nought, as made or attempted to be made in violation of the injunction ; and the mill should be sold, under the direction

of the court, and the proceeds paid over to those entitled.

Is there enough in this record by which to determine who is entitled? Is the trustee, Coberly, to be treated as *pendente lite* purchaser, as though his purchase was made on the 22d day of August, 1891, when it was first recorded in Tucker county, where the mill then was? In the case of W. F. Stout, the summons was issued on the 17th day of September, 1891, and served on Mrs. Glasscock on the 5th day of October, 1891, when the bill was filed, and this was after the deed of trust had been recorded. In the case of II. II. Taylor, it was issued on the 6th day of August 1891, served on the 17th day of August, 1891, and bill filed ―――― day of September. In the case of A. H. Osborn the summons was issued on the 10th day of August, 1891, served on the 17th day of August, and the bill of injunction was filed and an order of injunction entered on the 30th day of September, 1891. Section 7 of chaprer 74 of the Code provides that the writing shall not be void, in respect to the interests of any married woman, * * * if, before the end of three months after the disability shall cease, the writing be recorded in the county to which the property has been removed. This saving can have no application to this case, for the reason that she is the grantor in the deed of trust, not the beneficiary, and it relates to her separate estate. When the trust-deed was admitted to record in Tucker county, on the 22d day of August, 1891, Taylor and Osborn were creditors with pending suits, who, but for the deed of trust, would have a right to subject the sawmill to their debts; and the statute makes it voidable as to such creditors, not having been recorded in Tucker county within three months after the removal of the saw-mill thereto. They had commenced the only legal proceedings the law gave them to subject the mill to the satisfaction of their debts. It was then in the possession of Hyre and Constable, who had rented it of their debtor, Mrs. Glasscock; and it so remained until after the injunction against the sale under the deeds of trust was served and became effective. The subject of the suit was a specific thing, necessarily to be affected by decrees in their suits; and the mill was in

their bills so particularly described and pointed out that any one by reading the bills would know what steam saw-mill was sought to be subjected to sale. And the trustee, Coberly, knew before the 22d day of August, 1891, that these two suits had been instituted for that purpose. For a discussion of this point, see *Norton* v. *Birge* (1868) 35 Conn. 250, 257 ; *Hoyt* v. *Jones* (1872) 31 Wis. 389. See *Grant* v. *Bennett* (1880) 96 Ill. 513, 529 ; Benn. *Lis Pend.* § 299 *et seq.* ; Freem. Judgm. § 201, and cases cited.

*Radford* v. *Curwile* (1879) 13 W. Va. 572, and *Hughes* v. *Hamilton* (1882) 19 W. Va. 366, and *Bruff* v. *Thompson* (1888) 31 W. Va. (16 S. E. Rep. 352) were decided under chapter 66 of the Code, as it is in the edition of 1887, which left the right to subject a married woman's separate estate to the payment of her charges thereon, as a purely equitable one, enforceable only in a court of equity.

In *Hughes* v. *Hamilton*, it was held that such proceeding is in the nature of a proceeding *in rem*. By this the court did not mean to say that it was a technical proceeding to determine the liability of a specific thing to the payment of plaintiff's charge or claim, no matter who might be the owner, and having jurisdiction binding all the world by the decree; but they used it in a common, secondry sense—that it was a direct proceeding, *inter partes*, to subject a par-ticular thing, as the defendant's separate estate, to the pay-ment of plaintiff's charge thereon. Payment out of the particular thing was all he could ask, as he could get no personal decree against her; but such decree would not be binding, in any sense, on all the world. See 2 Freem. Judgm. §§ 606, 607. The court also held in that case that a general creditor of a married woman has no lien or charge upon the separate estate prior to the institution of his suit in equity to subject such separate estate to the payment of his debt, but that such debt, after suit brought, becomes a *quasi* lien, at least, upon such estate, and for the satisfaction thereof, and that such creditors are allowed priority in the order of time in which they bring their suits. What the court means, I infer, is that it is an incipient or inchoate lien or charge, which becomes fixed and determined by final decree, and that the rule of *lis pendens*, while it ap-

plies, keeps it from being rendered aboritive by intermeddlers.

In *Bruff* v. *Thompson*, there is an interesting discussion of the subject. If it is regarded as in the nature of an equitable lien, then the general rule is that it does not create a lien upon tangible personal property, unless the creditor procures the appointment of a receiver or in some way causes the sequestration of the property. See 2 Beach, Mod. Eq. Jur. § 927. That, as we have seen, was done in this case, so far as it could, in any view, be regarded as necessary. On the 12th day of June, 1891, as the day on which it took effect, chapter 66 was re-enacted so as to read as now found in the Code (Ed. 1891) and section 16, for the first time introduced, reads as follows: "A claim against the separate estate of a married woman for the payment of which she has charged the same shall be enforced only in a court of equity *in rem* and not *in personam.*" Under this law these suits were brought I take for granted that this was only declaratory, and that the term *"in rem"* was used in its secondary sense, already commented upon. And, apart from this case, the character of such *quasi* lien, if it means anything more than a *lis pendens*, taken in connection with the peculiarity of the suit, need not be further discussed; for by an act taking effect on the 16th day of February, 1893, chapter 66 of the Code was again amended and re-enacted. See chapters 3, 43, Acts 1893.

These important amendments, in manifest advancement of the property rights of married women, remove several defects in the law, as heretofore construed; bringing her nearer, in her rights and liabilities, and in the remedies and methods of procedure of her creditors, to the condition of a *feme sole*. They took effect some twenty six days before the entering of the decree here complained of, but have no bearing on this case, as far as I can see.

What may still be due on the deed of trust does not appear to have been ascertained. That should be done, and the mill should be sold, under the direction of the court, and the proceeds applied to the debts of Taylor, Osborn, those claiming as beneficiaries under the deed of trust, and of plaintiff Stout, in the order and according to the principles herein stated.

For the reasons given, the decree of the 14th day of March is reversed, and the cause remanded for further proceedings.