## SOUTHERN RAILWAY COMPANY *v.* FLEMING.

1. One who enters a train to be transported as a passenger, without having provided himself with a ticket, may be compelled to pay fare at the train rate instead of the ticket rate; and if he refuses to pay at the former rate, he may be ejected from the train, without subjecting the railroad company to liability for damages, provided the failure of the passenger to provide himself with a ticket is due to his own fault or negligence, and not to any fault or negligence upon the part of the company.

2. After a jury had been charged with the consideration of a case, and had spent one night and a portion of two days in deliberating upon the same, it was within the discretion of the trial judge, upon being informed by a member of the jury that they were "not likely to agree on a verdict," to remand them to their room for further deliberation, remarking to them at the same time, "I would regret, after you have given the case as long consideration as you have, for you to fail to agree on a verdict. I will send you back to your room for you to see if you can not agree on a verdict;" and there was no impropriety in the conduct or remark of the judge.

Submitted April 18,—Decided May 14, 1907.

Action for damages. Before Judge Russell. Franklin superior court. February 13, 1907.

*A. G. & Julian McCurry,* for plaintiff in error.

*W. L. Hodges,* contra.

BECK, J. 1. An action was brought by Fleming against the Southern Railway Company, in which the plaintiff claimed damages for an alleged wrongful ejection from the train of the defendant. The jury found a verdict in favor of the plaintiff, and the company excepted to a judgment denying it a new trial. While there are certain circumstances of aggravation alleged in the manner in which the plaintiff was ejected, the suit was brought, not for the recovery of damages because greater force was used than was necessary to accomplish his expulsion, but because of the alleged wrongful ejection from the train, upon which he claimed he had the right to be transported from the point at which he entered the same to his proposed destination, upon the payment of a fare at the rate of three cents per mile for the distance between the two stations.

Considering all the testimony most favorable to the plaintiff's case, we fail to find any evidence supporting the finding in his favor. When the conductor in the course of his passage through

the car for the purpose of taking up the tickets and collecting the fares, reached Fleming and asked for his ticket, the latter stated to him that he had no ticket, and stated, as a reason for his failure to procure a ticket: "There was no agent in the office when I called to get a ticket." And the plaintiff continued, in his testimony: "I handed him [the conductor] a five-dollar bill and told him I would pay fare at the rate of three cents per mile, or I would buy a ticket from Canon [his proposed destination] back to Royston, when I got to Canon. He agreed to this, and took the five-dollar bill, and said he would get it changed. In a few minutes he came back, handed me the bill, and said I would have to pay fare at the rate of four cents per mile, as I had no ticket. I refused to pay it, and he told me that unless I paid the fare I would have to get off the train." The plaintiff persisted in his refusal to pay fare at a higher rate than three cents per mile, and he was thereupon expelled from the train. Whether the plaintiff's ejection from the car was authorized and rightful, or unauthorized and wrongful, depends of course upon whether he had a right to be transported, as he demanded to be, at the ticket rate of three cents per mile; and that depends upon whether his failure to provide himself with a ticket was due to his own neglect, or to some fault or default of the company. The undisputed evidence in the record shows that up to the time of the arrival of the train, the ticket-office was open, and the ticket-agent was present and ready to sell tickets to any who might apply for them. Under a rule duly promulgated by the railroad commission of this State, ticket-offices "at way stations may be closed one minute before the arrival of the trains." And the same rule further provides that when "passengers, for want of proper diligence, fail to supply themselves with tickets before getting on the train, then four cents per mile for each passenger twelve years and over may be demanded and collected." Under the operation of this rule, the ticket-agent at a way station, such as the one at which the plaintiff entered the train, would not be compelled to remain at the office to sell tickets after the train arrives. And if one intending to become a passenger on the train fails and neglects to apply for a ticket until after the arrival of the train, he can not complain if the ticket-agent should not be in his office and ready to serve him.

In the present case the plaintiff's own testimony affirmatively shows that he lingered at and about a warehouse in the town of Royston until after the arrival of the train, and then went to the ticket-office to purchase a ticket, and found the agent absent from that place. Then, unprovided with a ticket, he entered the coach. And the fact of his being unprovided with a ticket being due entirely to his own, and not to the company's fault, the conductor had the right, under the provisions of the rule of the railroad commission, and a regulation of the company in accord with that rule, to collect, and it was his duty thereunder to collect fare at the rate of four cents per mile. His demand for fare at that rate was lawful and authorized, and should have been complied with by the passenger; and when the passenger refused to comply, it was the duty of the conductor to expel him from the train. The expulsion of the passenger not being wrongful under any view of the testimony, a recovery against the company was unauthorized. This conclusion is supported by former decisions of this court. In the case of *Georgia Southern Railroad Co.* v. *Asmore, 88 Ga. 531,* it was said: "According to sound legal principle, the right of the plaintiff to remain upon the train and be carried on payment or tender of the ticket rate should depend alone upon the fact whether the non-attendance of the ticket-agent at the office, or any other fault or default of the company, was the true reason why the plaintiff was not supplied with a ticket. If his failure to have it was due to his own neglect, or to any cause not chargeable to the company, its agents or employees, the tender of the ticket rate had no relevancy whatever to the right of the plaintiff to be carried or to shun objection from the car. He might as well have tendered nothing as not enough." And in *Central Railroad Co.* v. *Strickland, 90 Ga. 562,* it was said: "Under the law and rules prescribed by the railroad commission of this State, it is the duty of railroad companies to keep their ticket-offices open for the sale of tickets for a reasonable time before the departure of trains from all stations, provided that offices at way stations may be closed one minute before the arrival of trains; and it is the duty of passengers to use proper diligence in supplying themselves with tickets before getting upon the trains." In the case of *Coyle* v. *Southern Railway Co., 112 Ga. 122,* it was decided that "One who offers to purchase a railroad-ticket to be used upon a given train after the ticket-office, so far as relates to

the sale of tickets for that train, has been lawfully closed, can not demand the right to ride upon that train without paying the train rate of fare."

2. The court upon being informed by a member of the jury that they were "not likely to agree on a verdict," sent them back to their room for further deliberation, and, as he did so, said to them, "I would regret, after you have given the case as long consideration as you have, for you to fail to agree on a verdict. I will send you back to your room for you to see if you can not agree on a verdict;" and this action and remark of the court were excepted to on the ground that "it was not in accordance with proper practice, was undue interference by the court with the deliberations of the jury, and was calculated to unduly influence the jury in agreeing on a verdict, and to prejudice the rights of the defendant in the case." Directions to the jury from the court, such as are complained of in, this ground of the motion, are entirely within the discretion of the court,—a discretion which does not at all appear to have been abused in the present instance.

*Judgment reversed. All the Justices concur.*