*William Faircloth,* *Charles S. Claxton,* for plaintiff.

*E. L. Stephens,* contra.

---

2997. PERRY *v.* ATLANTIC COAST LINE RAILROAD CO.

1. There is no law or regulation of the railroad commission in this State which prevents a common carrier from making with members of the general public a contract by which the carrier sells to a member of the public at a reduced rate a mileage book, which shall not be good for passage on trains except from non-agency stations, or from agency stations not kept open for the sale of tickets, unless it is first exchanged for a ticket.

2. Where a person holding such a mileage book boards a train at a non-agency station, intending to travel to a point upon the railroad company's line, but, instead of asking the conductor to accept the coupons from the book to that point, asks him to take them only to an intermediate place, which is an agency station, and on arriving at that station attempts to continue his journey without exchanging his coupons for a ticket, notwithstanding the agency is open, and tenders the mileage book for the remainder of his passage, the conductor of the train, on behalf of the company, has the right to refuse to accept the mileage book for passage, and to eject the passenger unless he pays fare.

3. A person boarding a train as a passenger has the right to pay for his passage to any point on the line of the railroad company, and to remain on the train and demand transportation from that point to a still further point, upon complying with the usual terms relating to transportation from the point to which he first paid his passage; and this is true notwithstanding that he may have had it in mind all the time to make a continuous journey to the point of his final destination; but in remaining on the train at the intermediate point, after he has paid his fare only that far, he stands in the same situation as if he had boarded the train at that point, so far as paying for his further passage is concerned.

DECIDED APRIL 24, 1911.

Action for damages; from city court of Thomasville—Judge Hammond. September 20, 1910.

*Theodore Titus,* for plaintiff.

*Roscoe Luke, Bennet & Branch,* for defendant.

POWELL, J. Perry boarded a night train on the Atlantic Coast Line Railroad at Brinson, Ga., a station where the ticket office was not kept open at night. He offered for transportation what is known as "Form Z" mileage, which is a mileage book based on a special contract, the terms of which will be more fully set forth hereinafter. He wished to go to Boston, Ga., a point on the de-

fendant's line of railroad beyond Thomasville; Thomasville being a junction point. When he presented his mileage book to the conductor, he asked him to "pull" it to Thomasville, and did not tell the conductor that he intended to make continuous passage on to Boston. The passenger himself had the idea that there would be a change of conductors at Thomasville, and under a previous form of mileage he had been accustomed to have his mileage accepted by one conductor to Thomasville, and by another conductor on to his destination. At Thomasville, where we presume the ticket office was open (as nothing to the contrary is disclosed in the record), he failed to get a ticket. The same conductor came through and demanded fare of him, and he tendered the mileage book for his transportation on to Boston. The conductor declined to accept it, and told him that he would have to pay the regular train fare. Although he had the money with which he could have paid it, he declined to do so, and was ejected from the train.

The "Form Z" mileage book is based upon a special contract, signed by the holder, one of the terms of which is as follows: "Coupons from this ticket will not be honored on trains or boats, nor in checking baggage, except from non-agency stations, and agency stations not open for sale of tickets, but must be presented at ticket office and there exchanged for continuous passage tickets, which continuous passage will be honored in checking baggage and for passage, when presented in connection with this mileage ticket." It also contains a direction to conductors, as follows: "You will honor coupons from this ticket only when presented by passengers boarding train at a non-agency station, or agency station not open for sale of tickets. When so presented, you require passenger to sign his or her name on the back of the mileage strip which you detach for the trip, and to otherwise identify himself or herself as the original purchaser to your entire satisfaction." The book, it appears, was sold at a reduced rate. Upon these facts appearing at the trial of the suit, brought on account of the ejecting of the passenger, the court awarded a nonsuit, and the plaintiff excepts.

There is no law or railroad-commission rule in this State regulating the use of mileage books. They constitute special contracts, and are therefore within the purview of the Civil Code (1910), § 2726, to the effect that while a common carrier can not limit his legal liability by any notice given, either by publication or by entry

on receipts given or tickets sold, he may make an express contract which will be binding. In this case the plaintiff expressly agreed, in consideration of the reduced rate of fare, that the ticket would not be good on trains from points where there was an agency station open for the sale of tickets, but at such places it should be good only toward the purchase of tickets. There being no statute or railroad-commission rule to the contrary, and nothing to control the matter except the general law, this contract must be held to be valid, binding, and enforceable. It may be well to call attention to the fact that the reasonableness of this regulation as to interchangeable mileage books has been passed on by the railroad commission. In the thirty-seventh annual report of the railroad commission, at page 66, is to be found a letter from. Judge James K. Hines, special attorney of the commission, addressed to them, in which he cites several sections of the code and a number of Supreme Court decisions to show that the railroad companies in this State are not bound to honor these mileage books for passage, except from non-agency stations and at agency stations which are not kept open for the sale of tickets. In that letter he calls attention to the fact that, before the inauguration of the sale of these mileage books with this stipulation in them, the railroad companies submitted to the commission their plan of·issuing these books, together with the terms and conditions upon which they would issue them; and on March 26, 1908, the commission approved this plan and these terms and conditions. As Judge Hines very aptly said: "This regulation is reasonable, because it is based upon a special contract entered into between the purchaser and the railroad company selling the mileage book. It is, furthermore, reasonable because the commission has approved the plan and the terms and conditions under which the railways sell these tickets."

Now, if the plaintiff, when he boarded the train at Brinson, had asked the conductor to honor his mileage through to Boston, it would have been the duty of the conductor to do so, notwithstanding that Thomasville may have been an intermediate junction point, and notwithstanding a new conductor may have taken charge of the train at that place. As was held by the Supreme Court in *Central Railroad Co.* v. *Strickland*, 90 *Ga.* 562 (16 S. E. 352). "When a passenger, for want of a reasonable opportunity to purchase a ticket, has boarded a railroad train, and in consequence has

a right to do so without a ticket, he is entitled to complete his journey by paying the conductor the ticket rate for his fare. There is no rule of law, of which we have any knowledge, requiring him to leave the train at a station en route and purchase a ticket back to the one whence he started, and another to his destination." While the court was here discussing a slightly different question, still the analogy between the two cases is so complete as to make what is there said fully pertinent here. Not only that, but, following the analogy and reasoning of the court in *Georgia R. Co.* v. *Murden*, 86 *Ga.* 434 (12 S. E. 630), if a passenger gets on a train at an agency station, with one of these books and without a ticket, he may, upon paying the train fare to some non-agency station on the route, make the non-agency station an initial point of passage, and may from that point offer his mileage book for passage to his destination to any point upon the railroad company's line, and compel it to accept coupons from the book for this fare. We think the *Murden* case correctly indicates the rule to be that the passenger has the right to make his journey a broken one, even though he may have it in mind to continue on the same train.

However, the fact that the passenger may exercise this right gives to the carrier the privilege of taking advantage of the converse of the proposition, so that if the passenger gets on at a non-agency station, with the intention in his own mind of making a continuous journey throughout, for all of which the carrier would be obliged to accept coupons from his mileage book, yet voluntarily breaks his journey into parts, and the station to which he first gives the mileage coupons for his transportation turns out to be an agency station open for the sale of tickets, and he then continues his journey from that point, he must obtain a ticket there, or else stand in the same situation as if he had originally boarded the train at that point. We think this is true irrespective of whether the conductor knew the state of his mind as to his final destination. Therefore, in this case, although the plaintiff might originally have required the conductor to accept his mileage all the way from Brinson to Boston, yet since, instead of doing this, he asked the conductor to accept it for transportation only to Thomasville, a station at which he could have obtained a ticket, and there declined to get a ticket, the conductor was within his lawful rights when he refused the mileage, and, upon the plaintiff's refusal to pay the custom-

ary fare, ejected him from the train. This rule which we have announced, which, as has been seen, works both ways, is the only fair interpretation to give to the contract which the plaintiff voluntarily made with the company.

With the inconvenience which results from passengers being required to exchange mileage coupons for tickets, we, as judges, have no right to concern ourselves. That is a matter which addresses itself initially to the transportation companies, and finally to the legislature or to the railroad commission. So long as the law and the railroad-commission's rules remain as they are, it is our duty to enforce these contracts as they are made; and decisions from other States, where they have different laws or different regulations adopted by the railroad commission, are neither persuasive nor controlling.

*Judgment affirmed.*