## MEAD, Trustee &c., vs. NORRIS.

*Contempt of court: what constitutes—Right of party to relief while in contempt.*

1. A violation of an injunction (defectively served) of which the party has actual knowledge, is a contempt.

2. One in contempt, coming into the court to take advantage of proceedings in the cause, will not be heard; but he may appear and resist adverse proceedings, and is entitled to notice of them.

3. After a judgment against a party in contempt, if it is shown that he failed to appear and defend through his mistake or excusable neglect, or that of his attorney, and there is reason to believe that injustice has been done, the judgment may properly be vacated.

APPEAL from the Circuit Court for *Rock* County.

In June, 1854, A. Hyatt Smith mortgaged lot 2, block 40, in the city of Janesville, with some water power thereon, to the plaintiff, *Mead*, as trustee of the separate estate of Ann M. C. Smith, the wife of said mortgagor, in trust for said Ann, to secure the payment of $95,000 belonging to her estate. In June, 1856, Smith and wife executed a deed of lease of said lot to *Norris* for five years from June 1, 1856 ; said *Norris* to have the right to remove as his own, at or before the expiration of the term, the mill previously erected by him partly on said lot under a prior claim of lease. *Norris* went into possession under the lease. In 1859, the aforesaid mortgage to *Mead*, trustee &c., was foreclosed, and the property sold and conveyed by the sheriff to the mortgagee, as such trustee. *Norris* was made a defendant to the foreclosure action. In February, 1860, the present action was commenced to restrain *Norris* from removing the mill and machinery ; and upon the complaint an injunctional order to that effect was made. The defendant filed an answer, in which he alleges, among other things, that in 1856 he assigned said lease to one Dimock; that Dimock, in 1858, transferred it to one Demerritt, to whom defendant at the same time transferred his interest in the mill ; and that afterwards, and until the commencement of the suit, he ran the mill as agent of Demerritt. It appears that Demerritt was not a party to the foreclosure suit. It is claimed for plaintiff that the lease was not assignable without the lessor's consent, which was never given ; but the terms of the lease are not set out in the printed case. After answering, and while the injunctional order was still in force, *Norris* removed the mill and machinery. Afterwards, on the 23d of June, 1861,

an attachment was issued against him as for contempt in violating said injunction; and he obtained his discharge from arrest by giving bail in the sum of $3,000. On the return day of the attachment, he appeared to answer the alleged contempt; and interrogatories were duly filed, to which *Norris* filed answers in January, 1862, alleging that he removed the mill &c. as the agent of Demerritt.

No further step was taken in the injunction suit after the filing of the answer; and the proceedings for contempt were continued from time to time until the February term, 1866, of said court, when the matter of the alleged contempt was brought to trial, after notice duly served on the attorney of Norris; and on the 1st of March, the court adjudged the defendant to be in contempt for removing said mill and machinery; that plaintiff had sustained damages thereby to the amount of $6,000; and that he have execution therefor. On the same day the court made a further order, that upon the return of an execution unsatisfied, and defendant not found, plaintiff have leave to prosecute his bail bond. On the 3d of April, 1866, defendant obtained an order on plaintiff to show cause why the aforesaid orders of March 1st should not be vacated; and proceedings on the part of plaintiff were stayed until the hearing. The affidavit of the defendant repeats the statements of his answer as to the assignment of his lease to Dimock, and from him to Demerritt. It also states that the original injunction was not exhibited to him on service of the same, and that he was advised by his counsel that it was inoperative; that he employed the firm of Sloan & Patten to defend the action; that they also commenced an action for him against the plaintiff and his agents, and obtained an injunction restraining any further proceedings on his part to obtain possession of the mill; that affiant was notified by his counsel that the proceedings as for contempt had been abandoned; and that he had no notice of the hearing at which the orders com-

Mead, Trustee &c., vs. Norris.

plained of were made. It further states that nearly or quite one half of said mill was, not on said lot two, but on lot three, to which plaintiff had no title ; that the only machinery on lot two was a siding machine, which was run by a belt, and could be easily removed without injury to the realty, and was no part of the mill ; that the mill itself was built of rough boards, and the part situate on lot two not worth over $100. It also states that defendant removed the mill for Demerritt, and as his agent. Attached to this affidavit was an affidavit of merits. The affidavit of I. C. Sloan, Esq., read for defendant, states that the firm of Sloan & Patten, of which he was a member, was employed in this action by defendant, and was also employed by him as agent of Demerritt to protect the interest of the latter in said lot two ; that plaintiff, by his agents, was then endeavoring to get possession of the lot by virtue of a writ of assistance in the foreclosure suit ; that defendant informed him that the original injunction was not exhibited to him by the sheriff, and he advised defendant that it was inoperative and void ; that said firm obtained for defendant a stay of proceedings on the writ of assistance ; that affiant appeared for defendant in the attachment proceedings, and at the January term, 1862, the counsel for plaintiff called up said proceedings, and, as affiant recollects, the court dismissed the same, and he had so informed the defendant, stating to him that no further proceedings would be taken against him ; that he heard nothing further in regard to said proceedings until after March 1st, 1866 ; that affiant was elected to Congress in 1862, and since the commencement of the session of congress in 1863, had not given any time or attention to the practice of the law, and had dissolved partnership with Mr. Patten ; that he (affiant) had had the principal charge of the proceedings in relation to Demerritt and said lot two ; that learning from Mr. Patten that he had neglected to attend to said proceedings, he examined the law register of said firm, and ascertained that by mistake or inadvertence said

cause was not entered therein; that the first affiant heard of these proceedings after the January term, 1862, was some time in March, 1866, when he received a letter from defendant enclosing a notice of trial in this action for the February term of that year, and asking how the case stood; that he answered, advising defendant to write to Mr. Patten, or to go to Janesville and see about the case; and that he has since learned that said notice was not sent to defendant until the day on which the judgment was rendered. Other affidavits were read for the defendant, tending to show that his lease had been assigned as alleged in his answer and his own affidavit; that nearly half of said mill, and all of the machinery, except the siding machine mentioned in defendant's affidavit, were on lot three, and not on lot two; and that the part of the mill situate on lot two was not worth over $100. Counter affidavits were read for the plaintiff, tending to show that nearly the whole of the mill was upon lot two; that the value of the mill and machinery removed from that lot was not less than $6,000; that the lease had never been assigned in fact to Dimock or Demerritt; and that the proceedings in contempt had never been dismissed. The original lease was put in evidence, which, it is claimed by plaintiff's counsel, provided against any assignment without the lessor's consent. It appeared further, that the sheriff's return upon the writ of injunction stated that the original was exhibited to the defendant.

The circuit court vacated the orders of March 1, 1866, upon the terms that defendant pay the taxable costs accruing after the last notice of trial, and $10 attorney's fees for resisting this motion, and consent to have the cause referred to a commission to take the testimony therein. From this order the plaintiff appealed.

*M. S. Prichard* (with *Matt. H. Carpenter*, of counsel), argued that on defendant's own showing he had been guilty of a contempt; that while in contempt, he was not entitled to claim

Mead, Trustee &c., vs. Norris.

any relief from the court; and that the affidavits on his part did not show any proper excuse for his failure to appear, while the affidavits filed against the motion showed that the judgment against him was just.—Service upon the attorney was in law service upon the party; and neglect of the attorney is legally neglect of the party; and no excuse is shown for such neglect, no proof made of the use of ordinary diligence to appear and defend.

*H. S. Conger*, for respondent, contended, among other things, 1. That the orders for judgment were rightly set aside, because the complaint did not show any cause of action. The mortgage foreclosure by *Mead* as trustee, and the sheriff's deed to him, were for the benefit of Mrs. Smith, by whom also the lease to defendant was executed. The mortgagee's interest in the premises was therefore conveyed by the lease; and no foreclosure for Mrs. Smith's benefit could terminate the term as against her covenants in the lease. Under our statute (R. S., ch. 84, sec. 3), the title to the land at the foreclosure sale to *Mead*, as trustee, vested at once in her; and it enured to the respondent as her lessee. *Frazer v. Western*, 1 Barb. Ch., 220, 238; *Bard v. Fort*, 3 id., 632; *Johnson v. Fleet*, 14 Wend., 176; *Welch v. Allen*, 21 id., 147; *Nicoll v. Walworth*, 4 Denio, 385. 2. If the action does not lie, the respondent was not liable as for contempt at all. But even if it does lie, the respondent should be allowed to come in and make a defense, which he · omitted to make through excusable neglect.

DOWNER, J. This case is before us on an appeal from the order of the circuit court, ordering " that the following orders of the circuit court be set aside and vacated, and that the defendant be allowed to defend said action and the proceedings as for contempt therein: 1st. The order by which it was adjudged that the defendant was in contempt of the court, and that said defendant pay to the plaintiff the sum of six thous-

Mead, Trustee &c., vs. Norris.

and dollars. 2d. The order by which leave was granted to the plaintiff to prosecute the bond of the defendant given to obtain his discharge from arrest on attachment for contempt."

The defendant, in his affidavit, admits that he disregarded the injunction, and removed the mill in violation of it. He claims that the sheriff, when he served the injunction, did not exhibit to him the original, but only gave him a copy, and that his counsel advised him that such service was not good. The sheriff returned that he did not only give him a copy but exhibited and showed to him the original order of injunction. It is enough for us to know that he had knowledge that the injunction was granted. He was then bound to obey it. Advice of counsel cannot save him from the penalties of contempt. So much of the order as vacates the order or judgment of the court below, adjudging the defendant in contempt, must be reversed, with costs.

But the more difficult question arises under that part of the order vacating the judgment for damages. The circuit court found that the plaintiff had been injured by the misconduct of the defendant in removing the mill in violation of the injunction, to the amount of six thousand dollars, and rendered judgment for that sum. The appellant contends that the defendant, being in contempt, is not entitled to be heard until he has purged his contempt. The general rule is, that the court will not hear a party in contempt, coming himself into court to take any advantage of proceedings in the cause; but such party is entitled to appear and resist any proceeding taken against him, and is entitled to the same notice of such proceedings as though he were not in contempt. If a notice is not given when it is required by the rules or practice of the court, the proceedings are irregular, and may be set aside on the application of the party injured thereby, notwithstanding he is in contempt. *King v. Bryant,* 3 M. & Craig, 191. The general rule is not without exceptions. See *Rickets v. Morn-*

*ington*, 7 Sim., 200; *Wilson v. Bates*, 3 M. & Craig, 197. There can be no doubt, if no notice of the hearing had been given, the defendant might have moved to vacate the judgment, though he was in contempt. It would seem to follow that where, through the mistake or excusable neglect of the party or his attorney, judgment is entered *ex parte*, and there is reason to believe injustice has been done, that such judgment may, on the motion of the party in contempt, be set aside. We have some doubt whether the affidavit of Mr. Sloan, one of the defendant's attorneys, shows a sufficient excuse on their part for not appearing and resisting the judgment. But on the whole we have come to the conclusion that enough was shown to excuse the defendant's neglect, and to entitle him to have the judgment for damages vacated, and a new trial or assessment.

*By the Court.*—So much of the order appealed from as vacates the order or judgment of the circuit court adjudging the defendant in contempt, is reversed, with costs; and in other respects it is affirmed with costs.