**UNITED STATES of America**

v.

**AMERICAN RADIATOR & STANDARD SANITARY CORPORATION et al.**

**UNITED STATES of America**

v.

**PLUMBING FIXTURE MANUFACTURERS ASSOCIATION et al.**

**Crim. Nos. 66-295, 66-296.**

United States District Court
W. D. Pennsylvania.

Aug. 9, 1967.

Hubert I. Teitlebaum, Pittsburgh, Pa., for American Radiator & Standard Sanitary Corp.

Malcolm Anderson, Pittsburgh, Pa., for Wallace-Murray Corp.

T. W. Pomeroy, Jr., W. Walter Braham, Jr., Pittsburgh, Pa., for Plumbing Fixture Mfrs. Assn.

Paul J. Winschel, J. T. Fort, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for Kohler Co.

Harold R. Schmidt, Pittsburgh, Pa., for Crane Co.

Malcolm Anderson, Pittsburgh, Pa., Fred A. Freund, New York City, for John B. Balmer.

Frank L. Seamans, Pittsburgh, Pa., for Joseph J. Decker, Daniel J. Quinn, and Lawndale Industries, Inc.

Alexander Unkovic, Pittsburgh, Pa., for Norman R. Held.

John D. Ray, Ray & Good, Beaver, Pa., for Robert E. Casner.

James A. Bell, Thorp, Reed & Armstrong, Pittsburgh, Pa., for Universal-Rundle Corp.

J. Robert Maxwell, Pittsburgh, Pa., for Stanley Backner.

Thomas M. Kerr, Jr., Pittsburgh, Pa., for Robert J. Pierson, Jr.

J. Craig Kuhn, Pittsburgh, Pa., for George W. Kelch.

Elliott W. Finkel, Pittsburgh, Pa., for Gerber Plumbing Fixtures Corp.

David J. Armstrong, Pittsburgh, Pa., for Rheem Mfg. Co.

Clayton A. Sweeney, Pittsburgh, Pa., for Borg-Warner Corp.

Maurice Wechsler, Pittsburgh, Pa., O'Brien, Driscoll & Raftery, New York City, for Briggs Manufacturing Co.

J. Vincent Burke, Pittsburgh, Pa., for Ogden Corp.

Eugene B. Strassburger, Pittsburgh, Pa., for Mansfield Sanitary, Inc.

William J. Kenney, Pittsburgh, Pa., for Kilgore Ceramics Corp.

Harry W. Miller, Pittsburgh, Pa., for Georgia Sanitary Pottery, Inc.

Robert Wayman, Pittsburgh, Pa., for Peerless Pottery, Inc.

Harold E. Kohn, Aaron Fine, and David Berger, Philadelphia, Pa., for intervenors.

John Fricano, Dept. of Justice, Antitrust Div., Washington, D. C., and Gustave Diamond, U. S. Atty., Pittsburgh, Pa., for the United States.

## OPINION

ROSENBERG, District Judge.

This follows the decree for a preliminary injunction entered on July 28, 1967. This matter is here on four motions. The first motion was filed by the defendants in the two above entitled criminal actions to restrain and enjoin certain plaintiffs and party intervenors in civil actions, filed in the United States District Court for the Eastern District of Pennsylvania, from compelling the criminal defendants to file answers to the civil complaints and respond to discovery, particularly to interrogatories as filed in the civil actions.

The second motion was filed by counsel for some of the plaintiffs and party intervenors in the Philadelphia actions to dismiss the first motion as here filed by the defendants. The third motion, also a motion for injunction, was filed after the argument was had on the first two motions, by counsel for all the individual defendants in one of the criminal cases, to enjoin the corporate and co-defendants in the criminal cases and their agents from filing answers to complaints in Philadelphia and from otherwise divulging any matters in such civil proceedings, which matters may be relevant in the two pending criminal cases. A petition for leave to intervene was then filed by the plaintiff Philadelphia Housing Authority and a motion to dismiss the individual defendants' motion for injunction was also filed. The defendants objected to this petition at this point because the plaintiffs had already been served on the first motion for injunction.

I shall here identify the first motion as the (criminal) defendants' motion, as it comes from all the defendants in the two pending criminal actions in the Western District Court; the second motion as the (civil) plaintiffs' motion, as it comes from the party plaintiffs and intervenors in the Eastern District Court of Pennsylvania; the third motion as the individual (criminal) defendants' motion; and the fourth pleading as the plaintiffs' petition and motion.

The facts in this case are simple. After an extensive grand jury investigation into activities of plumbing manufacturers throughout the United States, a grand jury at Pittsburgh, Pennsylvania, on October 6, 1966, presented two indictments, charging antitrust violations, against the defendants named in the two criminal actions. These are numbered 66–295 and 66–296. On the same date the United States also filed a civil action at No. 66–1184 in the District Court for the Western District of Pennsylvania, charging antitrust violations and seeking injunctive relief.

The first indictment at Criminal No. 66–295 charges eight corporate defendants, a trade association and eight individual defendants, with engaging in a conspiracy, in violation of Section 1 of the Act of Congress of July 2, 1890, commonly known as the Sherman Act. The indictment charges, in substance, that the defendants conspired to fix the prices of enameled cast iron and vitreous china plumbing fixtures beginning sometime in September 1962 and continuing at least until sometime in 1966.

The second indictment at Criminal No. 66–296 charges ten corporate defendants and their trade association with engaging in a conpiracy in violation of Section 1 of the Sherman Act, in that such defendants conspired to fix the prices of staple vitreous and china plumbing fixtures beginning in November 1960 and continuing to June 1962.

On November 15, 1966, at the arraignment, all the defendants pleaded not guilty. Appearances of counsel had previously been entered for all the defendants. On November 3, 1966, an order was entered on agreement of all counsel to hold Civil Action No. 66–1184 in abeyance and to continue the same until further order of court.

A number of conferences were held by counsel and orders were made relating to the procedure to be followed. The defendants then filed joint motions to dismiss the indictments and to suppress evidence, and motions for pretrial. Four separate motions to dismiss were also

filed by three individual defendants and one corporate defendant. The defendants sought *en camera* proceedings in the hearings on evidence on their motions to suppress the evidence. On May 10, 1967, an order was entered providing for *en camera* argument to determine the necessity for *en camera* hearing of testimony on the motions to suppress. At the argument counsel for the Government and the defendants were directed to file affidavits, which each side eventually did. Determination of this matter is in the process of completion and will be filed shortly.

In the meantime, on December 21, 1966, in the District Court for the Eastern District of Pennsylvania, certain plaintiffs filed two civil actions at Nos. 41773 and 41774, based upon the indictments as found at Criminal Nos. 66–295 and 66–296 in this District, claiming treble damages against all corporate defendants.

In the first numbered case the action was brought by the Philadelphia Housing Authority as a class action in behalf of "all state and municipal governments, governmental agencies, authorities and subdivisions which build or renovate homes and apartment dwellings * * *." In this proceeding the States of Alaska and Michigan and various municipal and political governments and subdivisions or their authorities proceeded to become party intervenors.

The second numbered action was filed by Lindy Bros, Inc. of Philadelphia as a class action on behalf of "approximately 16,000 builders of home and apartment dwellings throughout the United States * * *."

The record before me indicates that forty-nine parties have sought to become intervenors. Both civil actions in the Eastern District Court were assigned as protracted cases to Judge John W. Lord, Jr. A series of motions and a number of hearings were had before Judge Lord as they related to continuances or postponements by the defendants for the filing of answers to the complaints in these civil actions and to postponing or continuing of the time for the filing of answers to the plaintiffs' interrogatories or other discovery processes.

A number of postponements were granted and Judge Lord, at my request, allowed still further time after the motion for injunction was filed here so that I could hear the parties and inquire into the voluminous pleadings and affidavits and briefs that had been presented to me during the time when I was away from my duties.

Prior to these postponements, Judge Lord had, after filing a comprehensive Memorandum and Order, stated that the plaintiffs in the civil actions had certain rights which should not be prejudiced by any delaying actions of the defendants, and that the requirement for the defendants to answer the complaints and interrogatories did in nowise prejudice the defendants because protective rights would be available to them during the actual discovery processes. On June 7, 1967, he denied the defendants' motions for a stay of all proceedings. Since Judge Lord's continuance protected the defendants until July 31, 1967, an argument on the first two motions was ordered by me to be held July 24th.

On June 30, 1967, all the defendants in both criminal actions filed a motion for injunction at Pittsburgh seeking to enjoin and restrain the plaintiffs and party intervenors in the civil actions at Philadelphia from compelling them as defendants in the civil actions to file answers either to the complaints or interrogatories, based upon practically the same reasons as were urged before Judge Lord. Immediately thereafter, counsel for the plaintiffs and party intervenors filed a motion to dismiss the defendants' motion, for the reasons (1) that service upon the lawyers of record was not service upon the parties; (2) that in any event it was not service upon all the defendants and intervenors; (3) that the Western District Court, being a court of concurrent jurisdiction could not oust the District Court for the Eastern District of Pennsylvania from its jurisdiction previously acquired; and (4) that the de-

termination by Judge Lord being one based upon his discretionary power was in all events valid and the law of the case.

At the July 24th hearing,[1] all arguments on the first two motions were heard. Counsel for the plaintiffs in the second motion were first heard on the question of jurisdiction, as they had indicated their desire to be heard, without submitting to the jurisdiction of this court.

The defendants argued that Federal Rules of Criminal Procedure Nos. 4(c) (2),[2] 17(e) (1),[3] 49(b),[4] and 57(b),[5] vest every federal district court in criminal actions with power to protect and extend its jurisdiction throughout the United States, and that another source of power is the historic All Writs Act, 28 U.S.C. § 1651.[6] Their basic argument for relief was that they would be unduly burdened in being compelled to present a defense to the civil actions in Philadelphia, particularly as it related to the multitudinous and burdensome discovery there, while at the same time they were required to prepare their defenses to the criminal actions at Pittsburgh; and that they would be deprived of due process of law by a fair trial in these criminal proceedings, and be unduly prejudiced if they were compelled to present evidence against themselves or against the other co-defendants, if so compelled to do in the Philadelphia civil proceedings.

During the argument counsel for the individual defendants (Criminal No. 66–295) suggested his likely intention of further protecting these individual defendants by a motion to enjoin the co-defendants from proceeding with discovery or pleading in civil actions at Philadelphia or elsewhere. This was filed on July 25th, and a hearing was set for July 28th. Argument was had, and the contentions of the movant individual defendants were essentially the same as those presented for the earlier motion for injunction. The individual defendants argued that any information which might be divulged by the officers of the co-defendant corporations would also prove prejudicial to their rights as defendants in the criminal case.

The plaintiffs' counsel, who appeared on July 24th, Mr. David Berger and Mr. Aaron Fine, also appeared at the July 28th hearing and argued against the motions. At the same time, Mr. Fine presented a petition for intervention and a motion for the dismissal of the individual defendants' motion for injunctive relief on the ground that the motion presented no controversy within the requirement of Article III, Section 2 of the Constitution of the United States because no adversary issue was presented between the individual defendants as movants and the co-defendants whom they sought to enjoin and that, therefore, the motion was collusive.

The first questions here then are (1) Do district courts have, under such circumstances as are here presented, jur-

1. The United States Attorney was present at this and the second hearing or argument, but took no part either way.

2. 4(c) (2). Territorial Limits. The warrant may be executed or the summons may be served at any place within the jurisdiction of the United States.

3. 17(e) (1). Place of Service.
   (1) In United States. A subpoena requiring the attendance of a witness at a hearing or trial may be served at any place within the United States.

4. 49(b) Service: How made. Whenever under these rules or by an order of the court service is required or permitted to be made upon a party represented by an attorney, the service shall be made upon the attorney unless service upon the party himself is ordered by the court. Service upon the attorney or upon a party shall be made in the manner provided in civil actions.

5. 57(b) Procedure not Otherwise Specified. If no procedure is specifically prescribed by rule, the court may proceed in any lawful manner not inconsistent with these rules or with any applicable statute. As amended Dec. 27, 1948, eff. Oct. 20, 1949.

6. § 1651. (a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

isdiction to grant remedial aid to criminal defendants? If the answer to the above is "yes", then (2) What method is available for making service upon the necessary parties required to be enjoined?

Both parties in their briefs and at the argument on July 24th referred to United States v. Simon, 262 F.Supp. 64 (S.D.N.Y., 1966), 373 F.2d 649, C.A. 2, 1967, cert. granted, sub. nom. Simon v. Wharton, 386 U.S. 1030, 87 S.Ct. 1485, 18 L.Ed.2d 591 (1967). Each side has presented it as supporting the contentions of that side. The defendants point to it as authority for present jurisdiction here and as precedent for the granting of injunctive relief to threatened defendants charged with crime. The plaintiffs point to the reversal by the Court of Appeals for the Second Circuit of the District Court's order restraining the plaintiffs in the civil action in another district, as disputing the defendants' contentions to any right of relief here.

Certain defendants in the *Simon* case, supra, who were charged in the District Court for the Southern District of New York with conspiracy to commit mail fraud and to make false statements in violation of the Securities Exchange Act, applied for an order enjoining the trustee in reorganization in the Eastern District Court pending trial of the criminal action, from taking their depositions and the depositions of other partners and employees of the firm which was charged civilly as a co-conspirator in the civil actions in the Eastern District.

The *Simon* case, supra, is not completely parallel with our action here. In *Simon* the criminal action was commenced subsequent to the filing of the civil action and after discovery had been in progress a year. Here the civil actions at Philadelphia are based on the allegations in the criminal indictments in Pittsburgh and were commenced after criminal prosecutions had started.

In *Simon*, the individual defendants declared that they were waiving constitutional privileges against self-incrimination because the claim of that privilege would damage the high reputations they held as public accountants. Here no such waiver exists, nor can any be demanded by the Government nor by me nor by anyone else. As such, the criminal defendants' rights may not be violated and must remain inviolate until the prosecution shall have presented evidence beyond a reasonable doubt in the criminal cases to support the charges as contained in the indictments and shall have met its burden as required by due process of law.

In *Simon*, the Court of Appeals for the Second Circuit reversed the District Court and indicated that because no constitutional privileges were involved, the District Court had no basis for injunctive relief. Following that, application was made to Mr. Justice Harlan, assigned to that Circuit, for a stay of the Court of Appeal's mandate and for a continuance of the injunction order as entered by the District Court, pending a certiorari application to the Supreme Court. Mr. Justice Harlan allowed the stay and issued the following Memorandum:

"Having considered the papers on both sides, I cannot regard the issue sought to be reviewed as insubstantial. I am also of the opinion, however, that continuance of the District Court's injunction order presently expiring by its own terms on March 16, 1967, is best left to that court.

Accordingly, I dispose of this application as follows. I deny the application for a continuance of the District Court's injunction order pending certiorari, without prejudice to the petitioners promptly applying to the District Court for such a continuance. I stay the execution and enforcement of the judgment entered pursuant to the mandate of the Court of Appeals pending this Court's disposition of and determination upon the petition for certiorari, on condition however that such petition is filed on or before March 23, 1967."

When the District Court was petitioned, Judge Bryan ordered the continuance of the injunction stating,

"Taking all the facts and circumstances into account, I conclude that there is reasonable probability that if the injunction order expiring March 17, 1967 is not continued in effect for at least a limited period such unfairness in the criminal trial is likely to result as to require the continued intervention of the criminal court to ensure the fair administration of criminal justice and the rules governing it. In my view the prejudice to the defendants were the injunction order not so continued substantially outbalances any prejudice to the Trustee and the interest he represents."

Certiorari was thereafter granted by the Supreme Court (386 U.S. 1030, 87 S.Ct. 1485, 18 L.Ed.2d 591 (1967).

■ Since the granting of certiorari and the (in any event, temporary) setting aside of the Second Circuit's reversal, I have here now reliable authority by which I may be guided (at least until the Supreme Court finally indicates guidance) by Judge Bryan's determination as a precedent for the granting here of protective relief for the defendants charged in the criminal indictments. I, therefore, hold that this District Court has jurisdiction of the subject matter here presented.

Does it, however, have jurisdiction over the persons? That question was not raised in *Simon*. It is raised here. The parties present no authority as to the character of procedure or process as it relates to these motions, although they do support their contentions by the various references to the Federal Rules and judicial holdings and dicta.

I have before me a criminal proceeding, not a civil action; and I sit as a criminal court, not a civil court. Although I may look to civil and perhaps equitable precedents, I am presented with no authority which points to the Federal Rules of Civil Procedure as directing procedural process here.[7] I do not ignore Federal Rule of Civil Procedure 1 which says "Scope of Rules. These rules govern the procedure in the United States district courts in all suits of a civil nature whether cognizable as cases at law or in equity or in admiralty, with the exceptions stated in Rule 81." I have carefully examined Rule 81 and note with what particularity inclusions and exceptions are set forth for the rules of civil procedure. It contains no reference whatsoever to criminal matters. Nor is there anything contained in the Federal Rules of Criminal Procedure other than that which has been presented by the defendants, as previously stated.

The constitutional rights of all defendants in the pending criminal actions against them is now presented to me as a problem for protective examination. Based upon the *Simon* case, supra, I now hold as Judge Bryan there held that this court does have jurisdiction. On that assumption I have a duty to perform in this regard and I am compelled to bring before me all those who may threaten to shake constitutional mandates, as they may appear to jeopardize the defendants. Since the plaintiffs have raised the question of service, inquiry must be had as to proper basic notice being made upon the necessary parties before injunctive relief could be granted to the defendants.

There is no doubt here that the attorneys representing the plaintiffs and party intervenors were served, and therefore, the necessary and sufficient connection which exists between attorneys and their clients would be sufficient notice upon which, after proper proceedings, a justification for the issuance of injunction could be had sufficient for the purposes here required.[8]

---

7. References to the Federal Rules of Civil Procedure are made in the Federal Rules of Criminal Procedure. However, more directly, Federal Rule of Civil Procedure 65(a) provides that "[n]o preliminary injunction shall be issued without notice to the adverse party."

8. This record indicates that while some of the plaintiff intervenors were notified, all the lawyers did receive notice. We consider also that notice to the State of Alaska as an intervenor would be as efficiently given to its counsel of record at Philadelphia.

■ I hold, therefore, that personal jurisdiction exists here at least as notice was had upon the attorneys upon whom service was made. They will be considered parties to this proceeding to preserve this court's criminal jurisdiction.

Inasmuch as the plaintiffs and party intervenors in the Philadelphia civil actions could act only through, in privity or in concert with their counsel in the circumstances, it would seem that all such parties can and should be bound by an injunction order.

In Ex Parte Lennon, 166 U.S. 548, 17 S.Ct. 658, 41 L.Ed. 1110 (1897), the Court said:

"The facts that petitioner was not a party to such suit, nor served with process of subpoena, nor had notice of the application made by the complainant for the mandatory injunction, nor was served by the officers of the court with such injunction, are immaterial, so long as it was made to appear that he had notice of the issuing of an injunction by the court. To render a person amenable to an injunction, it is neither necessary that he should have been a party to the suit in which the injunction was issued, nor to have been actually served with a copy of it, so long as he appears to have had actual notice. High, Inc. § 1444; Mead v. Norris, 21 Wis. 310, Wellesley v. Mornington, 11 Beav. 181."

In Reich v. United States, 239 F.2d 134, at page 137, C.A. 1, 1956, cert. den. 352 U.S. 1004, 77 S.Ct. 563, 1 L.Ed. 2d 549, the Court said:

" * * * It has been settled law for a long time that one who knowingly aids, abets, assists, or acts in active concert with, a person who has been enjoined in violating an injunction subjects himself to civil as well as criminal proceedings for contempt even though he was not named or served with process in the suit in which the injunction was issued or even served with a copy of the injunction. In re Lennon, 1897, 166 U.S. 548, 554, 17 S.Ct. 658, 41 L.Ed. 1110; Alemite Mfg.

Corp. v. Staff, 2 Cir. 1930, 42 F.2d 832 and cases cited. See also Rule 65(d) Fed.Rule Civ.Proc. 28 U.S.C.A. * * *."

■ The plaintiffs, in their motion to dismiss the individual defendants' motion for an injunction, contend that an additional jurisdictional question is presented in that no "case or controversy" exists as between the co-defendants so as to support the jurisdiction of this court. The plaintiffs rely on several cases, Aetna Life Insurance Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240, 241, 57 S.Ct. 461, 81 L.Ed. 617 (1937); United States v. Johnson, 319 U.S. 302, 63 S.Ct. 1075, 87 L.Ed. 1413 (1943). Neither of these cases supports the plaintiffs' contention, for each of them related to the question of the court obtaining jurisdiction of the cases in the first instance, and did not relate to the question of appropriate action by a trial judge in a case where jurisdiction is concededly already vested. Additionally, the Johnson case, supra, was based upon a finding of collusion, and I make no such finding here.

■ Are the defendants entitled to injunctive relief under the circumstances as here presented? The defendants contend they will be burdened if they are required to proceed in Philadelphia and will be so inconvenienced in their defense in the criminal cases here as to deprive them of due process and a fair trial. As Judge Bryan held in United States v. Simon, supra, and Judge Lord held in the Philadelphia cases, the defendants have adequate personnel and are numerous enough as defendants as to be able to bear any possible burden, though inconvenient and heavy, of both the civil and criminal actions.

The defendants contend that if they are compelled to answer at Philadelphia, their rights in the pending criminal cases to demand that the Government meet its burden and present evidence beyond a reasonable doubt against them will be prejudiced by all or any of that which they may be now constrained to present at Philadelphia. It is true that the corpo-

rations only are the defendants in the civil actions at Philadelphia and that neither they nor their officers in their corporate capacities have any rights to the Fifth Amendment privilege against self-incrimination. However, it is also true that some of the criminal individual defendants are officers of the civil corporate defendants who may be required to present answers in Philadelphia or compel those over whom they have supervision to present answers which can prejudice them in the criminal actions.

If I were to presently deny the defendants' motion, I am effectually compelling them to make answers which may tend to incriminate them in the event that the Government does not already have such information. I do not doubt that the Government agencies will be alert, as they should be, in their examination of all matters which such Philadelphia defendants might present. Should such answers be divulged under such circumstances, the Government, too, might be harmed because of the objections to the admission of any evidence at the criminal trials, and so possibly make such evidence inadmissible. In any event, one may reasonably anticipate that the defendants in the criminal trial would avail themselves of all possible objections (as they would have the right to do) as the circumstances would present. All of which would confuse, and perhaps complicate, the due processing of a fair criminal trial. No one will doubt that I am duty-bound to respect the Government's rights even as I must respect the defendants' rights in a criminal action.

While the individual criminal defendants are not directly defendants in the Philadelphia cases, they are so interlinked in the overall picture so far as any conspiratorial evidence may appear, that it becomes vital at this time. We cannot anticipate or prophesy what will be divulged by answers and production of documents in discovery proceedings, but we may reasonably believe that matters prejudicial to all of the defendants will be divulged at a time prior to that during which they will be compelled to stand trial for the criminal charges. Once this occurs, like the opening of Pandora's box, it may never be recalled or cancelled out. It will then have been too late. It is presently proper to prevent such a probable happening in the future. I now justify that consideration additionally as based upon my examination of the interrogatories and requests for production of documents.

Seventy-one interrogatories were filed in Philadelphia. Some of these interrogatories contained multiple questions. Altogether they attempt to lay open in minute detail the grand jury proceedings by which the indictments in the criminal cases resulted and official, individual and customer activities relating to or in anywise connected with such grand jury proceedings.

The motion for production as filed in the Philadelphia civil cases lists a demand for "written, printed, typed, recorded, or graphic matter, however produced or reproduced * * *", in the period from January 1954 to December 1966 and subsequent thereto. The list enumerates forty-three numbered items for the productions so requested, which include summaries of grand jury investigations, such as subpoenas, testimony, records of various cases and a multiple number of demands for corporate, official, individual, customer and government-related matters. I now find that the constrained answering of these matters by the defendants would result in irreparable injury to the defendants and to the public as it would affect the due and orderly processing of these pending criminal cases before me.[9]

The plaintiffs argue that the issue determined by Judge Lord in the Philadelphia cases is the same as presented for injunctive remedy; that the District Court at Pittsburgh and the District Court at Philadelphia have co-existing jurisdiction; that the Eastern

---

**9.** The record discloses that similarly based civil actions for treble damages have been filed in the District Court for the Northern District of California.

District Court received the first jurisdiction and that Judge Lord's discretionary determination binds the Western District Court. With this I cannot agree. The question of postponing discovery in Philadelphia is the same in both Districts, but the jurisdiction and issues as they apply in this District are different. This needs no further discussion because we may, at least for the present, accept the determination made by the District Court and not negated by the Court of Appeals for the Second Circuit in *Simon*, supra, that there is jurisdiction here.

I should add that Judge Lord's decision was a discretionary one and properly determined under the circumstances of that case. But if the District Court is charged with the duty of conducting a fair criminal trial and has the power (or jurisdiction) to enforce it, it becomes here not one of discretion but of precept. Thus there is this distinction which refutes the plaintiffs' contention that the identical issue was discretionarily adjudicated by Judge Lord. The determination here at Pittsburgh, it appears, is not dictated by any statute or federal rule of procedure. The Supreme Court has declared it to be an inherent power in the trial judge by which the duty is imposed upon him to provide orderly and fair processing of criminal trials, both as relates to the prosecution, the defendants, and variously related third parties. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966); Estes v. State of Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819 (1943).

The court's inherent power to supervise the administration of criminal justice within its jurisdiction was explained by the Supreme Court in McNabb v. United States, supra, 318 U.S. at page 340, 63 S.Ct. at page 613, where Justice Frankfurter stressed the court's "duty of establishing and maintaining civilized standards of procedure and evidence. Such standards are not satisfied merely by observance of those minimal historic safeguards for securing trial by reason which are summarized as 'due process of law' and below which we reach what is really trial by force."

The significant difference between the issue existing in Philadelphia from that in Pittsburgh was pointed out by Judge Wisdom in Campbell v. Eastland, 307 F.2d 478, 487, C.A.5, 1962, cert. den. 371 U.S. 955, 83 S.Ct. 502, 9 L.Ed.2d 502 (1963), in these words:

"There is a clear-cut distinction between private interest in civil litigation and the public interest in a criminal prosecution, between a civil trial and a criminal trial, and between the Federal Rules of Civil Procedure and the Federal Rules of Criminal Procedure."

I add only that the criminal defendants' right to due process is distinguishable from that of parties in civil actions. In the civil action testimonial compulsion of defendants is a rule. In criminal actions it is an exception.

The defendants charge that the Government will be aided by the civil discovery procedures in the Philadelphia cases and that the Government should not be indirectly granted discovery which exceeds that offered by the Federal Rules of Criminal Procedure. Campbell v. Eastland, supra; United States v. Peck, 150 F.Supp. 262, 264 (D.Del.1957); In re National Window Glass Workers, 287 F. 219, 226–228 (N.D.Ohio, 1922); See also United States v. Sermon, 218 F.Supp. 871, 872 (W.D.Mo., 1963).

The primary duty for protecting the plaintiffs' rights lies with Judge Lord in Philadelphia. But when, as here, I exercise jurisdiction so as to interfere with the processing of a civil case, I must be mindful of the respective situations of all concerned parties, the plaintiffs at Philadelphia, as well as the Government and defendants here.

I have given considerable consideration to the possible harm which may accrue to the plaintiffs by the granting of a preliminary injunction. I agree

with Judge Lord that the plaintiffs are entitled to the right to proceed as quickly as they may in procuring the necessary information by way of Federal Rules of Civil Procedure so that they may be able to recoup whatever losses can be proved as resulting to them.

The plaintiffs complain that they will be harmed by an injunction because of the delay which is imposed on the processing of their treble damage actions, in that memories may dim with time and because of the danger of loss or destruction of the presently available and existing records of various kinds.

This contention is argumentative only and seeks support in the recent reversal by the Court of Appeals for the Third Circuit of a stay of proceedings granted by Judge Augelli in Borda v. American Oil Co. et al., Civil Action No. 947–66 (D.C.N.J., 1966) (Texaco, Inc. v. Charles A. Borda et al., C.A. 3, 1967, 383 F.2d 607). Our Court of Appeals, while approving the overall stay pending determination of a criminal action, nevertheless permitted the deposing of Mr. Borda because of his advanced age. We have no such circumstance before us.

Therefore, while recognizing that the plaintiffs are entitled to speedy availability of discovery processes of persons and records, the delay by the granting of a preliminary injunction will not unduly cause the plaintiffs irreparable harm as weighed against the possible irreparable harm to the defendants. In fact, by a speedier disposition of the criminal actions now pending before me, the plaintiffs are likely to acquire greater benefits from records divulged in the criminal proceedings under 15 U.S.C. § 16(a).[10]

One other matter should be here discussed. The plaintiffs argue that no priority exists between the two types of actions, that they are constitutionally and equally entitled to proceed in the civil actions for damages as the defendants may be to due process and a fair trial in the criminal proceedings.

We have no directive by statute or rules of procedure as to priorities where civil and criminal proceedings clash, as they appear to do here. But we do have expression after expression for which no authority is needed on the fundamental right or preservation of life and liberty, commencing with the expression contained in the Declaration of Independence. Although property rights may have been included in particularly the words "pursuit of happiness", it is significant that the founders of our country deemed it not of such comparative importance as life and liberty as to mention it in the Declaration of Independence. The whole sentence which speaks of this is here presented as a reference to the specific words used: "We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty and the pursuit of Happiness." This will not deny the constitutional right to property, but that raises no question here, for I can see no prejudicial results to the plaintiffs while here protecting the fundamental rights of the defendants in the pending criminal actions.

As far as constitutional priorities are concerned, we would be in an unreasonable dilemma if we attempted to equalize all constitutional rights. For instance, the right to a fair criminal trial may at times conflict with the right to freedom of the press under the First Amendment. Yet freedom of the press must give way to the extent that it interferes with due process of law and the procurement of a fair trial. Sheppard v. Maxwell, supra; Estes v. State of Texas, supra.

10. 16(a) A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws * * *.

We consider any prejudice which may result to the ultimate criminal defendants from pretrial disclosures from all possible sources. In other motions in these criminal proceedings presently before me, the defendants seek *en camera* hearings because of local and wide-spread publicity attributed to the legal proceedings at Pittsburgh. Although the discovery matters at Philadelphia are presently properly pretrial matters in the civil proceedings there pending, the matters which may be disclosed there undoubtedly would receive the attention of the press. In that connection, Sheppard v. Maxwell, supra, gives strong cautions to trial judges. At page 362, the Court stated:

"From the cases coming here we note that unfair and prejudicial news comment on pending trials has become increasingly prevalent. Due process requires that the accused receive a trial by an impartial jury free from outside influences. Given the pervasiveness of modern communications and the difficulty of effacing prejudicial publicity from the minds of the jurors, the trial courts must take strong measures to ensure that the balance is never weighed against the accused. And appellate tribunals have the duty to make an independent evaluation of the circumstances."

The function of the trial court is to conduct the whole proceedings—trial and pretrial—in an atmosphere of dignity and integrity, so as to shield the trial process itself from external factors. Estes v. State of Texas, supra, concurring opinion of Chief Justice Warren at 381 U.S., page 562, 85 S.Ct., page 1642.

At page 363 of 384 U.S., at page 1522 of 86 S.Ct., the Court added that the courts must be concerned with the protections at such times as the need for protections come to their notice. It cautioned in this respect by these words:

"But we must remember that reversals are but palliatives; the cure lies in those remedial measures that will prevent the prejudice at its inception. The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences. Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function."

It is a duty of the trial judge in such proceedings to protect the accused in a criminal case.

Practical application for the preservation of right to a fair trial is the scale by which reality is weighed. Human experiences and human tendencies bear upon the balance and these we cannot ignore.

Repeating what has already been said, the lawyers on both sides in this criminal proceedings will, as earnestly as they can, represent their respective clients. They will observe technicalities and use them where they can. They will do this not because of any ulterior motive to detract from a fair trial, but they will do this because of their warranted beliefs in their right to pursue the due process accorded to their respective clients.

The remedies available to the parties before any harm is done to either side comes not at the time of trial when prejudice to the defendants and injustice to the public may prevail, but now at the inception when notice of such possibilities and likelihoods are presented in formal manner. I deem the time to act in this connection is now.

For all of these reasons a Decree granting a preliminary injunction has been entered on the 28th day of July 1967. All motions inconsistent with this Decree will be denied.

All findings of fact and conclusions of law are here incorporated as they may be required by law.